*In re* CARLOS M. PALMER RAMOS, querellado.

*Número:* CP-2012-7          *Resuelto:* 29 de marzo de 2016

246

*Irene S. Soroeta Kodesh* y *Margarita Mercado Echegaray*, procuradoras generales, *Zaira Z. Girón Anadón, Tatiana M. Grajales Torruella, Karla Z. Pacheco Alvarado*, subprocuradoras generales, *José Enrico Valenzuela Alvarado* y *Yaizamarie Lugo Fontánez*, procuradores generales auxiliares; *José Luis Velázquez Ruiz* y *Raúl Rodríguez Quiles*, abogados del querellado; *Carlos M. Palmer Ramos, pro se; Mercedes Marrero de Bauermeister*, comisionada especial.

PER CURIAM: En esta ocasión nos corresponde sancionar a un abogado por incumplir con el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, y con ciertas disposiciones de la Ley Notarial de Puerto Rico (Ley Notarial), Ley Núm. 75-1987 (4 LPRA sec. 2001 *et seq.*).

I

El Lcdo. Carlos M. Palmer Ramos (licenciado Palmer Ramos o querellado) fue admitido al ejercicio de la abogacía el 12 de diciembre de 1975 y a la notaría el 3 de febrero de 1976. El 11 de mayo de 2007, el Sr. Alexis J. Troche Rivera (señor Troche Rivera o querellante) presentó una queja contra el licenciado Palmer Ramos. Los hechos que dieron lugar a este procedimiento disciplinario se exponen a continuación.

El 21 de noviembre de 2001, el licenciado Palmer Ramos autorizó la Escritura Núm. 182 sobre Segregación y Partición (Escritura Núm. 182) para la Sucesión del Sr. Hermenegildo Rivera Vázquez y la Sra. Dolores Vázquez Martínez, compuesta por el Sr. Carlos Rafael Rivera Rodríguez y las Sras. Eugenia, María, María Virginia y Ana Luz Rivera Martínez (Sucesión Rivera-Vázquez). En la escritura, el querellado consignó que la Sucesión Rivera-Vázquez segregaba la Finca Núm. 1293 en varios solares según fuera aprobado por la Administración de Reglamentos y Permisos (ARPe) en el caso Núm. 01U2-00000-03910. Además, expresó que la cabida de la Finca Núm. 1293 era 13.9746 cuerdas, medida que constaba en el Registro de la Propiedad.

Sin embargo, en la autorización de ARPe y en el plano preparado por el agrimensor Sr. José R. Rivera en el caso Núm. 01U2-00000-03910, se estableció que la cabida de la Finca Núm. 1293 era de 9 cuerdas. Asimismo, la Escritura Núm. 182 también reflejó discrepancias con la autorización de ARPe en el desglose de las cabidas de otros solares,

particularmente los núms. 3, 5 y 11 (Remanente).(¹) A pesar de lo anterior, el querellado no hizo constar advertencia particular alguna en la Escritura Núm. 182; solo señaló que hizo las advertencias legales pertinentes.

Ese mismo día, el licenciado Palmer Ramos autorizó las Escrituras Núm. 183 a la 186 sobre División Parcial de Comunidad(²) y la Escritura Núm. 187 sobre Compraventa (Escritura Núm. 187). En esta última, el querellado autorizó la compraventa del solar número 2 —adjudicado a la heredera Ana Luz Rivera Martínez mediante la Escritura Núm. 184— a favor del señor Troche Rivera. Nuevamente, no surge de esta escritura alguna advertencia particular, sino solo que el querellado realizó las advertencias legales pertinentes.

El 20 de febrero de 2002, la Sra. Ana Luz Rivera Martínez presentó ante el Registro de la Propiedad la mayoría de las escrituras mencionadas anteriormente.(³) El 27 de febrero de 2006 retiró las Escrituras Núms. 182, 183, 185 y 187. Para el 21 de septiembre de 2007 la cabida de la Finca Núm. 1293 en el Registro de la Propiedad continuaba siendo 13.9746 cuerdas.

El 11 de mayo de 2007, el señor Troche Rivera presentó la queja objeto de este procedimiento disciplinario. En esencia, alegó que contrató al querellado para que autorizara una escritura de compraventa y que ésta no pudo inscribirse en el Registro de la Propiedad por unas deficiencias. Señaló que la escritura fue retirada del Regis-

---

(¹) Indicó que la cabida de los solares núms. 3, 5 y 11 eran 586.8087, 586.8087 y 22,272.22 metros, respectivamente, aunque la autorización de la Administración de Reglamentos y Permisos (ARPe) señalaba que eran 586, 666 y 20,241.56 metros.

(²) En dichas escrituras se realizaron las divisiones siguientes: el heredero Sr. Carlos Rafael Rivera Rodríguez recibió los solares núms. 1 y 7 (Escritura Núm. 183); la heredera Sra. Ana Luz Rivera Martínez recibió los solares núms. 2 y 9 (Escritura Núm. 184); la heredera Sra. María Virginia Rivera Martínez recibió los solares núms. 3 y 3A (Escritura Núm. 185); la heredera Sra. María Rivera Martínez recibió los solares núms. 5, 10 y 10A, mientras que la heredera Sra. María Eugenia Rivera Martínez recibió los solares núms. 4, 5A, 5B, 6 y 8 (Escritura Núm. 186).

(³) No presentó ante el Registro de la Propiedad para su inscripción ni la Escritura Núm. 184 ni la Escritura Núm. 186.

tro de la Propiedad y que el querellado no ha realizado gestión alguna para lograr que se inscriba. Indicó que sufrió pérdidas económicas porque la negligencia del licenciado Palmer Ramos tuvo el efecto de malograr un trámite de préstamo de construcción que solicitó.[4]

En su contestación a la queja, el licenciado Palmer Ramos explicó su trabajo con la Sucesión Rivera-Vázquez y aceptó que el solar número 2 se le transfirió al quejoso. Señaló que, una vez se presentaron los documentos en el Registro de la Propiedad, el Registrador "precalificó" los instrumentos e informó la discrepancia entre la cabida que se reflejaba en el plano de ARPe y la que constaba en el Registro de la Propiedad. Arguyó que la heredera Sra. María Eugenia Rivera Martínez le informó que el agrimensor Jose R. Rivera estaba atendiendo el asunto, pero que cuando trató de comunicarse con él descubrió que se encontraba incapacitado. Por lo tanto, acordó con la Sucesión Rivera-Vázquez instar la acción judicial de rectificación de cabida, pero explicó que no se había comenzado porque se requería una certificación de mensura preparada por otro agrimensor. Por último, explicó que se ha comunicado con la Sucesión Rivera-Vázquez y no con el quejoso por razones éticas, pero que las medidas que ha tomado han ido dirigidas a resolver la situación del quejoso a pesar de que no fue contratado para el trámite de rectificación de cabida.[5]

Posteriormente, la otrora Directora de la Oficina de Inspección de Notarías (ODIN), Lcda. Lourdes I. Quintana

---

[4] Acompañó con la queja copia de un cheque por $250 con fecha de 20 de noviembre de 2001 a favor del querellado y algunos documentos relacionados con la queja que presentó en el Colegio de Abogados por los mismos hechos, pero de la que desistió para acudir a este Foro.

[5] El querellado incluyó como anejo una declaración jurada del agrimensor José R. Rivera Cruz suscrita en diciembre de 2003. En ésta, el señor Rivera Cruz expresó que la mensura de la Finca Núm. 1293 —realizada a petición de la Sucesión Rivera-Vázquez— tenía una cabida menor, a saber, 9 cuerdas. Además, anejó una comunicación que ARPe le envió en febrero de 2005 al agrimensor, de la cual surge que se presentó ante la agencia una solicitud de rectificación de cabida. En la carta, ARPe le requirió varios documentos adicionales y le informó que era necesario un trámite judicial para aclarar la cabida en el Registro de la Propiedad, puesto que se trataba de una disminución de 35.62%.

Lloréns, presentó ante nosotros un Informe. Luego de exponer el trasfondo fáctico, concluyó que la discrepancia entre las cabidas existía al momento en que el querellado autorizó la Escritura Núm. 182 y surgía de los documentos utilizados para la segregación. Por lo tanto, el licenciado Palmer Ramos debió solicitar los antecedentes registrales de la Finca Núm. 1293 y aclarar la situación antes de autorizar la escritura.(⁶) Como mínimo, la ODIN entiende que debió consignar en la Escritura Núm. 182 la discrepancia y una advertencia en cuanto a la necesidad de rectificar la cabida, así como las consecuencias de no hacerlo antes de segregar la finca. En cambio, el licenciado Palmer Ramos indicó en la Escritura Núm. 182 que la cabida registral era de 13.9746 cuerdas, lo cual causó que el Registrador de la Propiedad notificara la diferencia y se afectara el tracto de las escrituras posteriores, incluyendo la Escritura Núm. 187 del quejoso. Asimismo, la ODIN señaló que el querellado también incluyó cabidas incongruentes para los solares núms. 3, 5 y 11. Por lo anterior, la ODIN entendió que el querellado incumplió con los Arts. 2, 14 y 15(f) de la Ley Notarial, 4 LPRA secs. 2002, 2032 y 2033.(⁷)

El licenciado Palmer Ramos reaccionó al Informe de la ODIN y, entre otras cosas, señaló que entendió de buena fe que tenía que describir la finca según las constancias del Registro y no los documentos complementarios. Razonó que por ser la discrepancia en la cabida atribuible al Remanente, se podía atender posteriormente sin afectar el proceso de inscripción de las escrituras. Por lo tanto, indicó que los titulares pueden presentar nuevamente las escri-

---

(⁶) La Oficina de Inspección de Notarías (ODIN) señaló que del plano de segregación surgía que la Finca Núm. 1293 tenía varios solares que, al parecer, ya se habían segregado, lo cual explicaría la disminución de cabida. Informe [de la ODIN], págs. 11–12.

(⁷) La ODIN también recomendó, para la evaluación final de la queja, que el licenciado Palmer Ramos, entre otras cosas, aclarara la situación actual del inmueble e informara las gestiones que realizó para resolver la deficiencia que presentaba la Escritura Núm. 182.

turas y el Registrador debía inscribirlas.[8] Asimismo, arguyó que las discrepancias en las cabidas de los solares núms. 3, 5 y 11 se debieron a unos errores mecanográficos y que le informó a los titulares que tenían que otorgar un acta notarial pero que no incurrirían en gasto alguno.[9]

Luego de algunos trámites, el 30 de agosto de 2011 la Procuradora General también rindió un Informe. En síntesis, coincidió con la ODIN en cuanto a que el licenciado Palmer Ramos tenía la obligación de aclarar la cabida antes de autorizar las escrituras o, al menos, hacer las advertencias necesarias. Determinó que esa omisión puede significar una posible violación al Canon 18 del Código de Ética Profesional, *supra.* Asimismo, hizo referencia al Art. 63 de la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 2266, el cual dispone que un notario que por su falta cometa alguna omisión que impida la inscripción de un contrato tiene el deber de subsanar prontamente el error cuando se le requiera. Expuso que el querellado tuvo conocimiento de la queja desde el 2007, pero que todavía no ha logrado la inscripción de las escrituras. En cambio, en 2010 el querellado le comunicó a la oficina del a Procuradora General, por medio de su representante legal, que la diferencia en cabida se debía a un terreno que fue ocupado por una carretera, pero que no había podido corregir la situación porque el quejoso no quería cooperar. Según el licenciado Palmer Ramos, el quejoso no cooperó porque no aceptó su sugerencia de desistir de la queja sin perjuicio para evitar un alegado conflicto de interés con el abogado que tramitaría la rectifica-

---

[8] Utiliza como fundamento varios casos de este Tribunal, particularmente, *Ruiz v. Torres*, 61 DPR 1 (1942); *Piñero v. Registrador*, 75 DPR 455 (1953), y *Alameda Tower Associates v. Muñoz Román*, 129 DPR 698 (1992).

[9] Este Tribunal concedió a la ODIN un término para que se expresara en cuanto a la contestación del querellado. En su Moción en Cumplimiento de Orden, la ODIN indicó que de la contestación no surge que el querellado asumió su responsabilidad por las deficiencias de las Escrituras y que tampoco informó gestiones concretas dirigidas a resolver este asunto. Además, entendió que la solución del licenciado Palmer Ramos, de presentar nuevamente las escrituras en el Registro de la Propiedad sin rectificar la cabida o añadir una advertencia en cuanto a la discrepancia en cuestión, no garantizaba la inscripción de estas Escrituras.

ción de cabida, abogado que contrataría el querellado. La Procuradora General no encontró justificación alguna que le impidiera al licenciado Palmer Ramos, con una queja activa, corregir la situación para lograr la inscripción de las escrituras. Por lo tanto, concluyó que no ha sido diligente en ese asunto y que esa conducta podría conllevar otra violación al Canon 18 del Código de Ética Profesional, *supra.*

Este Tribunal ordenó a la Procuradora General que presentara la querella correspondiente y ésta así lo hizo. En la querella se formularon los cargos siguientes:

PRIMER CARGO—El licenciado Carlos M. Palmer incumplió con el principio consagrado en el Artículo 2 de la Ley Notarial al consignar información en la [E]scritura Núm. 182 que era [incompatible] con la realidad de los hechos y la información que tuvo ante su consideración.

SEGUNDO CARGO—El licenciado Palmer incumplió con el Artículo 14 y el Artículo 15(f) de la Ley Notarial al otorgar la Escritura Núm. 182 sin antes aclarar la cabida del inmueble y al no consignar del propio documento, las advertencias específicas que por su importancia para el negocio jurídico y para el consentimiento informado de las partes deben detallarse expresamente.

TERCER CARGO—El licenciado Palmer violó los preceptos del Canon 18 de Ética Profesional al no realizar una labor idónea y competente en su labor como abogado-notario previo y durante el al [sic] otorgamiento de la Escritura Número 182 y 187, así como al no realizar las diligencias necesarias para subsanar los defectos que impidieron la inscripción de las referidas escrituras. Querella, págs. 6, 7 y 8.

El licenciado Palmer Ramos contestó la querella y alegó que no incumplió con lo establecido en el Art. 2 de la Ley Notarial, *supra*, porque él tenía la obligación de describir la Finca Núm. 1293 según las constancias del Registro de la Propiedad. Razonó que la discrepancia en este caso era "una cuestión técnica que nunca debía salirse del ámbito de la propia Administración [d]e Reglamentos [y] Permisos [...]".([10]) Por otro lado, señaló nuevamente que las discrepancias en las cabidas de los solares núms. 3, 5 y 11 se

---

([10]) Contestación de querella, pág. 1.

debieron a errores mecanográficos y que se propone otorgar un acta notarial para corregirlas.

Con relación a la violación de los Arts. 14 y 15 de la Ley Notarial, *supra*, explicó que la Sucesión Rivera-Vázquez, a pesar de conocer que había una diferencia en cabida, le requirió que otorgara la escritura de segregación porque los herederos querían adjudicar los solares según lo habían hecho físicamente hacía años. Reconoció que posiblemente cometió un error al no consignar expresamente las advertencias sobre la cabida, pero que el otorgamiento lo realizó según la voluntad de los otorgantes. Finalmente indicó que logró concertar una reunión con un agrimensor, el Sr. Arturo Llavona Cartagena, pero que surgió un inconveniente con unas contribuciones sobre la propiedad y el caso fue desistido. Alegó que después de reunirse con ciertos herederos para solucionar el asunto de las contribuciones, contrataron a otro agrimensor, el Sr. Bienvenido Alverio Berríos, quien realizó el plano de rectificación de cabida. Sin embargo, una de las herederas falleció y el querellado está trabajando libre de costo con la sucesión de la causante para que puedan comparecer al otorgamiento de la rectificación de cabida. Indicó que estaba esperando la certificación de cancelación de gravamen del Departamento de Hacienda para continuar con los trámites.

Examinadas las comparecencias del querellado, de la ODIN y de la Procuradora General, nombramos a la Hon. Mercedes Marrero de Bauermeister, ex jueza del Tribunal de Primera Instancia, como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que estimara pertinente. Según el Informe de la Comisionada Especial, el licenciado Palmer Ramos niega el primer cargo, admite el segundo y, con relación al tercero, admite que omitió las advertencias requeridas, pero expresa que realizó las diligencias necesarias para subsanar los defectos.

Luego de celebrar una vista evidenciaria,[11] la Comisionada Especial concluyó que el licenciado Palmer Ramos incumplió con el Art. 2 de la Ley Notarial, *supra*, al autorizar un documento que carecía de eficacia. Razonó que el querellado debió prever que la discrepancia en cabida impediría la inscripción de la Escritura Núm. 182 y que afectaría las escrituras posteriores. Asimismo, determinó que violó los Arts. 14 y 15(f) de la Ley Notarial, *supra*, al otorgar la Escritura Núm. 182 y al no consignar las advertencias necesarias. Por último, entendió que violó el Canon 18 del Código de Ética Profesional, *supra*, al faltar a su deber de diligencia, no tan solo en la otorgación de la Escritura Núm. 182, sino también en los trámites para lograr la rectificación de la cabida. Señaló que "aunque la tardanza en el prolongado trámite no le sea imputable directamente al licenciado Palmer Ramos, el lograr la aprobación de la rectificación de cabida del remanente tomó en exceso de diez (10) años desde la fecha que el licenciado Palmer Ramos autorizó las escrituras con faltas, a sabiendas de ello".[12] La Comisionada Especial recomendó la suspensión del querellado del ejercicio de la notaría.

Examinemos la normativa aplicable a este asunto.

## II

Está firmemente establecido que el notario es el custodio de la fe pública y que, como tal, está obligado a

---

[11] La vista evidenciaria se celebró el 16 de enero de 2014. La Sra. María Eugenia Rivera Martínez testificó que la Sucesión Rivera-Vázquez conocía que la Finca Núm. 1293 tenía una cabida de 9 cuerdas; que cuando el querellado supo que el Registrador de la Propiedad iba a notificar la discrepancia en la cabida, le advirtió que tenía que contratar un nuevo agrimensor y presentar una acción judicial para rectificarla, y que, aunque al momento de la vista la Escritura Núm. 182 no estaba inscrita, cada heredero había tomado posesión de los solares según adjudicados. Por otro lado, el agrimensor Bienvenido Alverio Berríos testificó que en septiembre de 2010 la Sra. Olga Rodríguez lo contactó para encomendarle la mensura de la Finca Núm. 1293; que en diciembre de ese mismo año le proveyó a la Sucesión Rivera-Vázquez la cotización por sus servicios, y que a finales del 2011 la Sucesión lo contrató. La mensura arrojó una cabida de 9 cuerdas y él presentó una solicitud de rectificación de cabida a ARPe, la cual fue aprobada el 18 de mayo de 2012.

[12] Informe de la Comisionada Especial, pág. 15.

cumplir con la Ley Notarial, su Reglamento y los cánones del Código de Ética Profesional. *In re Nieves Nieves*, 171 DPR 843, 848 (2007); *In re Davison Lampón*, 159 DPR 448, 455 (2003); *In re Montañez Miranda*, 157 DPR 275, 282 (2002). El incumplimiento con esas fuentes de obligaciones exponen al abogado a las sanciones disciplinarias que este Tribunal estime procedentes. *In re Fontánez Fontánez*, 181 DPR 407, 418 (2011); *In re Davison Lampón*, supra.

El Art. 2 de la Ley Notarial, *supra*, dispone:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original).

Acorde con lo anterior, el Art. 14 de la Ley Notarial, *supra*, establece que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia". Igualmente, como parte de su función, el notario tiene que asegurarse de obtener el consentimiento informado de los otorgantes, haciéndoles todas las explicaciones, aclaraciones y advertencias que sean necesarias. *In re Torres Alicea*, 175 DPR 456, 461 (2009); *In re Jiménez Brackel*, 148 DPR 287, 295 (1999). En esencia, cuando un notario autoriza una escritura debe:

> (i) indagar la voluntad de los otorgantes; (ii) formular la voluntad indagada; (iii) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; y (iv) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. *In re Davison Lampón*, supra, pág. 461. Véase *Chévere v. Cátala*, 115 DPR 432 (1984).

■ En cuanto a las advertencias, el Art. 15(f) de la Ley Notarial, *supra*, dispone que el notario deberá consignar en la escritura, entre otras cosas, "[e]l haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente". Este Tribunal ha expresado que el notario debe aplicar el derecho positivo y la jurisprudencia considerando, a su vez, el contenido del negocio y las estipulaciones que se suscribirán al momento de decidir qué advertencias debe hacer constar. *In re Torres Alicea*, supra. En consecuencia, tiene la obligación ética de conocer el derecho aplicable al asunto ante su consideración.

■ Por último, el Canon 18 del Código de Ética Profesional, *supra*, impone al abogado el deber de ser competente, cuidadoso y diligente al tramitar los asuntos que su cliente le encomienda y al defender los intereses de este último. Cuando un notario contraviene las disposiciones de la Ley Notarial, viola el referido canon al no ejercer la profesión con el cuidado y la prudencia requeridas. *In re Muñoz Fernós*, 184 DPR 679, 685 (2012).

Apliquemos este marco legal a los hechos ante nuestra consideración.

### III

Los cargos presentados contra el licenciado Palmer Ramos se circunscriben en su mayoría al otorgamiento de la Escritura Núm. 182. En particular, se indica que violó el Art. 2 de la Ley Notarial, *supra*, al consignar en la Escritura Núm. 182 que la cabida de la Finca Núm. 1293 era de 13 cuerdas, a pesar de que tal cabida no surgía de los planos de ARPe ante su consideración. Asimismo, surge de la querella que violó los Arts. 14 y 15(f) de la Ley Notarial, *supra*, al no aclarar la cabida de la Finca Núm. 1293 antes

de otorgar la Escritura Núm. 182 y no incluir las advertencias específicas que se debían detallar, dada la discrepancia y sus posibles consecuencias. Por último, se le imputó una violación al Canon 18 del Código de Ética Profesional, *supra*, por no realizar una labor idónea al autorizar las Escrituras Núms. 182 y 187 ni subsanar los defectos con la diligencia requerida.

Por su parte, el querellado entendió que estaba obligado a incluir en la escritura la cabida que constaba en el Registro de la Propiedad y que la discrepancia en cuestión no afectaría la inscripción de esa escritura ni las posteriores. Por otro lado, aceptó que debió incluir expresamente en la Escritura Núm. 182 las advertencias con relación a la discrepancia en la cabida y la necesidad de rectificarla. Respecto a la subsanación de las escrituras, indicó que ha realizado las diligencias necesarias.

■    Hemos establecido que un notario tiene el deber de conocer el estado registral de la propiedad sobre la cual se otorga la escritura para así asegurarse que autoriza un documento eficaz y que obtuvo el consentimiento informado de los otorgantes. *In re Toro González II*, 193 DPR 877 (2015); *In re Torres Alicea*, supra, págs. 460–461; *Feliciano v. Ross*, 165 DPR 649, 659 (2005).

Además, en *Alameda Tower Associates v. Muñoz Román*, 129 DPR 698 (1992), resolvimos que el Registrador de la Propiedad actuó correctamente al negarse a inscribir una escritura porque "en el Registro y en la faz de los documentos complementarios constaba la anomalía de que la cabida de la finca original era *menor* que la suma de las cabidas de las fincas segregadas y el remanente [...]". (Énfasis en el original). Íd., pág. 708. Esto porque se quiere que la finca en sentido material corresponda a la finca en sentido registral, a saber, que la realidad física sea acorde con la jurídica para poder identificar la finca de forma más certera. Íd., págs. 706–707.

Examinados los documentos ante nuestra considera-

ción, así como las comparecencias de las partes, concluimos que el licenciado Palmer Ramos violó el Art. 2 de la Ley Notarial, *supra,* al autorizar un instrumento que carecía de eficacia. El querellado debió saber, según lo establecido por este Tribunal en *Alameda Tower Associates v. Muñoz Román,* supra, que la Escritura Núm. 182 y las posteriores no tendrían acceso al Registro de la Propiedad. La primera, por la discrepancia en la cabida de la Finca Núm. 1293 y la de los solares núms. 3, 5 y 11; el resto de las escrituras por falta de tracto.([13]) Por lo tanto, antes de autorizarla debió cerciorarse de que la situación se había aclarado mediante el proceso correspondiente de rectificación de cabida.([14]) Al no hacer lo anterior, también violó el Art. 14 de la Ley Notarial, *supra,* ya que no adaptó la voluntad de los otorgantes a las formalidades jurídicas necesarias para su eficacia. En este caso, la voluntad de los otorgantes, según el querellado, era segregar la Finca Núm. 1293 y llevar a cabo la partición, operación que no pudo ser inscrita por las faltas del licenciado Palmer Ramos.

Por otro lado, cuando el licenciado Palmer Ramos decidió otorgar la Escritura Núm. 182 con la discrepancia antes aludida, violó los Arts. 14 y 15(f) de la Ley Notarial,

---

([13]) Desconocemos si las escrituras en controversia tienen otras deficiencias.

([14]) En lo pertinente, el Art. 247 de la Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 2772, dispone que:

"La rectificación de cabida de todas las fincas ya inscritas podrá hacerse constar en el Registro por cualquiera de los medios que siguen:

"*Primero.*—Mediante sentencia firme dictada en un procedimiento ordinario de deslinde judicial o fijación de cabida.

"*Segundo.*—Por escritura pública cuando se trate de disminución de cabida o de un exceso no mayor del veinte por ciento (20%) de la cabida registrada y se lleve a efecto mediante la oportuna mensura técnica acreditada con arreglo a lo dispuesto en la sec. 2765 de este título. En todo caso de disminución de cabida será preciso acreditar la autorización de la Junta de Planificación o de la agencia gubernamental correspondiente.

"*Tercero.*—Mediante expediente de dominio, por todo el exceso, cuando éste fuere mayor del veinte por ciento (20%). En este caso se citará el dueño anterior inmediato aunque haya trasmitido por escritura pública. En los casos en que el Departamento de la Vivienda sea el titular de dicha finca o haya otorgado dicho título, la rectificación de cabida podrá realizarse mediante escritura pública y la oportuna mensura técnica acreditada con arreglo a lo dispuesto en este subtítulo".

*supra*, porque no hizo constar una advertencia específica detallando la situación e indicando que se requería un procedimiento de rectificación de cabida para lograr el trámite de segregación y su posterior inscripción. Véase *In re González Vélez*, 156 DPR 580, 582–583 (2002). Cabe mencionar que la heredera María Eugenia Rivera Martínez testificó en la vista ante la Comisionada Especial que los miembros de la Sucesión Rivera-Vázquez sabían que la cabida de la Finca Núm. 1293 era de 9 cuerdas. Sin embargo, eso no excusa los incumplimientos del licenciado Palmer Ramos, máxime cuando la señora Rivera Martínez también indicó que el querellado le advirtió la necesidad de presentar una acción judicial para rectificar la cabida cuando ya las escrituras estaban presentadas en el Registro de la Propiedad.[15]

Finalmente, con relación a la responsabilidad que le impone el Art. 63 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, de subsanar prontamente las faltas que impidan la inscripción de un contrato, entendemos que el licenciado Palmer Ramos no cumplió con la diligencia requerida. Tal y como señala la Procuradora General, el querellado supo de la queja presentada por el señor Troche Rivera desde el 2007. Además, la ODIN rindió un Informe en el 2009 en el cual señaló que el querellado debía asumir la responsabilidad por las faltas en este caso. Sin embargo, para el 16 de enero de 2014 la Escritura Núm. 182 y las posteriores todavía no estaban inscritas en el Registro de la Propiedad.

Cabe recordar que en el 2010 la representación legal del querellado envió una carta señalando que el quejoso no estaba cooperando con el proceso de subsanación porque no quiso retirar la queja sin perjuicio. El licenciado Palmer Ramos entendía que si el señor Troche Rivera no la retiraba, el abogado que él contratara para tramitar la rectificación de cabida tendría un conflicto de interés. Coincidimos con la Procuradora General en cuanto a que no existe

---

[15] Informe de la Comisionada Especial, págs. 10–11.

justificación alguna para que el querellado no haya realizado las gestiones necesarias para subsanar la situación que impide la inscripción de las escrituras otorgadas en el 2001 cuando tuvo conocimiento del interés del quejoso desde el 2007.

Todas las conductas anteriores, además de constituir una violación a varios artículos de la Ley Notarial, también contravienen el Canon 18 del Código de Ética Profesional, *supra*. El querellado no fue diligente ni responsable al defender los intereses de su cliente y, en consecuencia, para el 2014 —13 años después del otorgamiento— la Escritura Núm. 187 del quejoso aún no estaba inscrita.[16] Por todo lo expuesto, concluimos que en el caso ante nuestra consideración se probaron los cargos contra el licenciado Palmer Ramos mediante prueba clara, robusta y convincente, según requerido por nuestro ordenamiento. *In re Fontánez Fontánez*, supra, pág. 417; *In re Caratini Alvarado*, 153 DPR 575, 585 (2001).

## IV

Tras establecer que el querellado incumplió con los Arts. 2, 14 y 15(f) de la Ley Notarial, *supra*, así como con el Canon 18 del Código de Ética Profesional, *supra*, le corresponde a este Tribunal imponer una sanción disciplinaria.

Al momento de analizar cuál debe ser esta sanción, se consideran diversos factores como el historial previo del licenciado, su reputación en la comunidad, si la conducta se realizó con ánimo de lucro, si aceptó los cargos imputados, su arrepentimiento y cualquier otra consideración que se estime pertinente. *In re Toro González II*, supra, pág. 897; *In re Peña, Santiago*, 185 DPR 764, 787 (2012).

Surge del expediente del licenciado Palmer Ramos que en mayo de 1993 ODIN le notificó unas deficiencias en los

---

[16] Al presente, no sabemos si están inscritas en el Registro de la Propiedad.

Protocolos de 1990 y 1991;(17) la subsanación de estas deficiencias requirió la intervención de esta Curia. En esa instancia, se le impuso una sanción de $500 y se le apercibió en cuanto a futuras inobservancias. Sin embargo, en el 1996 este Tribunal le impuso una sanción de $100 y volvió a apercibirle sobre futuras inobservancias por "remisiones por correo ordinario, de dos testamentos y un poder, en violación a la Regla 12(C) del Reglamento Notarial de 1975, y la remisión tardía (por un mes) de [una Escritura de Testamento Abierto]" y desatender el requerimiento de la ODIN de que explicara dicha tardanza.(18) Posteriormente, la ODIN le notificó unas deficiencias en los Protocolos correspondientes a 1992 y 1993.(19) Además, tiene una queja pendiente, la queja AB-2015-91, la cual se presentó el 5 de marzo de 2015 y que al presente el querellado no la ha contestado.

Según el Informe de la Comisionada Especial, el querellado aceptó que omitió las advertencias requeridas, pero negó los otros cargos. Por otro lado, no se demostró que el ánimo de lucro fuera el motivo de su conducta. No obstante, en vista de las faltas cometidas y del historial disciplinario previamente expuesto, estimamos procedente ordenar la suspensión inmediata del licenciado Palmer Ramos del ejercicio de la notaría por un término de seis meses. La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautar su obra notarial y entregarla a la

---

(17) La mayoría de las deficiencias eran arancelarias y las demás incluían la falta de firma, iniciales, rúbrica, antecedentes y fe del conocimiento de los otorgantes, como también la omisión del valor de varias transacciones.

(18) Informe de la Comisionada Especial, pág. 1. Véase Informe [de la ODIN], pág. 3.

(19) Las deficiencias consistían en omitir la fe del conocimiento de comparecientes, de las iniciales y en haber dejado en blanco un espacio con referencia a una hipoteca. El querellado corrigió las deficiencias ese mismo año. Por otro lado, para el 2009, parte de su obra notarial se encontraba en etapa de reinspección por deficiencias arancelarias, la omisión de la capacidad representativa de los comparecientes, las circunstancias personales de los otorgantes, el carácter ganancial o privativo de inmuebles, así como la falta de sello notarial y rúbrica. Informe [de la ODIN], págs. 3–4. No surge del expediente cuál es el estado actual de la obra notarial del licenciado Palmer Ramos.

Oficina de Inspección de Notarías para la investigación y el informe correspondientes.

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Pabón Charneco no intervino.