EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | |
| | 2019 TSPR 131 |
| Sandra I. Peña Osorio | 202 DPR _____ |

Número del Caso:  AB-2018-0132


Fecha:  14 de junio de 2019


Oficina del Procurador General:

    Lcda. Lorena Cortés Rivera
    Subprocuradora General


    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Abogada de la Promovida:

    Por Derecho Propio


Conducta Profesional: La suspensión de la notaría  será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|                                          |               |
|------------------------------------------|---------------|
| In re:<br><br>Sandra I. Peña Osorio<br>TS-6372 | AB-2018-0132 |

*PER CURIAM*

En San Juan, Puerto Rico, a 14 de junio de 2019.

En esta ocasión nos corresponde determinar si la Lcda. Sandra I. Peña Osorio infringió los Artículos 2 y 15(f) de la Ley Notarial 4 LPRA secs. 2002 y 2033, y los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 18, 35 y 38.

La licenciada Peña Osorio fue admitida al ejercicio de la abogacía el 20 de abril de 1979 y a la práctica de la notaría el 26 de junio del mismo año. El proceso disciplinario de epígrafe surgió como consecuencia de una queja presentada por la Sra. Yolanda Ríos, el Sr. Alexander Ríos (señores Ríos) y el Sr. Neftalí O'Neill Rosa (en conjunto, promoventes) en contra de la Lcda. Sandra I. Peña Osorio y la Lcda. Aida Moringlane Ruiz.[1] Con el fin de juzgar los méritos de dicha queja, expondremos los hechos que dieron

_____

[1] La queja presentada en contra de la licenciada Moringlane Ruiz fue archivada por medio de una Resolución emitida el 14 de junio de 2019.

lugar a la misma y examinaremos el derecho sustantivo aplicable al caso. Veamos.

I

-A-

El 15 de mayo de 1994, la Sra. Gregoria García Piñero y sus diez (10) hijos, procreados en el matrimonio de esta con su difunto esposo, el Sr. Justino Feliciano García, otorgaron la Escritura Núm. 27 sobre Donación, Segregación, Rectificación de Cabida y Adjudicación de Herencia (Escritura Núm. 27 de 1994), ante el Lcdo. Julio César Colón. Por medio de esta, se segregó en diez (10) solares una finca identificada con el número 1427, los cuales fueron adjudicados a cada uno de los diez (10) hijos del señor Feliciano García y la señora García Piñero, por virtud de la donación realizada por esta última y aceptada por aquellos en el mismo instrumento.[2] El 4 de diciembre de 2003, la Escritura Núm. 27 de 1994 fue presentada ante el Registro de la Propiedad, Sección de Fajardo, y quedó registrada en el Asiento 1059 del Libro 265 del Diario de Operaciones del Registro, para su calificación y despacho.

La Sra. Elisa Feliciano García es una de las hijas del señor Feliciano García y de la señora García Piñero, y

---

[2] Posteriormente, el 10 de octubre de 2000, la señora García Piñero otorgó la Escritura Núm. 91, sobre Agrupación y Acta Aclaratoria, autorizada por el Lcdo. Julio César Colón Ortiz, con el propósito de aclarar que, por medio de la Escritura Núm. 27 de 1994, donó su participación ganancial y el usufructo viudal que tenía sobre la finca matriz. Además, expresó que la Finca Núm. 1515, la cual había sido segregada anteriormente, debía agruparse a la finca matriz.

adquirió la titularidad del solar número cuatro (4) por medio de la Escritura Núm. 27 de 1994.

En el año 2004, la señora Feliciano García y los señores Ríos otorgaron la Escritura de Compraventa Núm. 18 (Escritura Núm. 18 de 2004) ante la licenciada Peña Osorio, por medio de la cual la primera transfirió la titularidad del solar número cuatro (4) a los señores Ríos. Valga señalar que, a pesar de que en la descripción del inmueble objeto de la compraventa la licenciada Peña Osorio consignó que este no constaba inscrito en el Registro de la Propiedad, omitió incluir una advertencia relacionada con los riesgos y posibles efectos de esa falta de inscripción.

Por su parte, el señor O'Neill adquirió la titularidad de uno de los solares que fueron segregados a través de la Escritura Núm. 27 de 1994, por medio de la Escritura Núm. 23 del 3 de abril de 1997, la cual fue autorizada por el Lcdo. Faustino Peña Osorio.

El 9 de diciembre de 2010, el Registrador notificó varias faltas que impedían la inscripción de la Escritura Núm. 27 de 1994. No obstante, debido a que dichas faltas no fueron corregidas dentro del término dispuesto para ello, el asiento de presentación de la Escritura Núm. 27 de 1994 caducó efectivo el 7 de febrero de 2011.

De otro lado, en el año 2009, la licenciada Peña Osorio representó a la señora Feliciano García en el Caso Civil Núm. NSCI200900589, sobre Agrupación de Finca y Herencia, incoado por esta en contra de los integrantes de la Sucesión

de la señora García Piñero.[3] En ese caso, la señora Feliciano García solicitó la agrupación de las fincas adquiridas por ella y los demandados a través de la Escritura Núm. 27 de 1994. Planteó que el Registro de la Propiedad no inscribió dicha escritura debido a que la propiedad había sido segregada previamente por los dueños originales, lo que tuvo el efecto de que la descripción de la propiedad en la Escritura Núm. 27 de 1994 no correspondiera a la realidad registral.

El 2 de septiembre de 2014, el Tribunal de Primera Instancia dictó una sentencia en el Caso Civil Núm. NSCI200900589, por medio de la cual decretó su desestimación tras concluir que no se presentó prueba suficiente para cumplir con los requisitos mínimos establecidos en el ordenamiento jurídico para ordenar la agrupación de las fincas.

-B-

El 22 de mayo de 2018, los promoventes presentaron ante este Tribunal la queja de epígrafe en contra de las licenciadas Peña Osorio y Moringlane Ruiz. Sostuvieron, en síntesis, que adquirieron una propiedad de la Sra. Elisa Feliciano García y que contrataron los servicios de la licenciada Peña Osorio para que otorgara la escritura de compraventa. Expresaron que dicha escritura no pudo ser

---

[3] Cabe señalar que, en el año 2013, la licenciada Moringlane Ruiz representó legalmente a los señores Ríos, quienes comparecieron en el Caso Civil Núm. NSCI200900589 como parte interventora.

inscrita en el Registro de la Propiedad porque contenía unos errores y debido a que una escritura anterior tampoco había podido ser inscrita.

Los señores Ríos indicaron que realizaron diversas gestiones para comunicarse con la licenciada Peña Osorio, pero estas resultaron infructuosas, por lo que no tuvieron más remedio que contratar a otro abogado, quien se comunicó con dicha licenciada. Arguyeron que, en esa comunicación, la licenciada Peña Osorio se comprometió a hacer todo lo posible para inscribir la escritura.

Por otro lado, alegaron que la señora Feliciano García, vendedora de la propiedad, contrató a la licenciada Peña Osorio para que inscribiera la Escritura Núm. 27 de 1994, pero esta no lo logró.

El 25 de junio de 2018, la licenciada Peña Osorio presentó su Contestación a la Queja. En síntesis, sostuvo que el 12 de enero de 2004, la señora Feliciano García y los señores Ríos visitaron su oficina para que autorizara una escritura de compraventa sobre un solar ubicado en Ceiba. Adujo que, tras solicitar un estudio de título, se percató de que la propiedad no constaba inscrita en el Registro, por lo que orientó a la señora Feliciano García sobre la necesidad de corregir los defectos notificados por el Registrador. Además, expresó que, a pesar de que orientó a las partes sobre la imposibilidad de inscribir la escritura de compraventa en el Registro, estas optaron por otorgarla, debido a que ya habían efectuado el negocio jurídico e

interesaban asegurar la transacción realizada. Asimismo, indicó que se comunicó con el licenciado Colón Ortiz, notario que autorizó la Escritura Núm. 27 de 1994, para informarle sobre la necesidad de corregir los defectos que tenía la misma, pero este no mostró interés para comparecer al tribunal a fin de agrupar las dos fincas. Añadió que, posteriormente, la señora Feliciano García contrató sus servicios legales para que la representara en una acción civil dirigida a solicitar la agrupación de las parcelas, de manera que la Escritura Núm. 27 de 1994 pudiera ser inscrita y que la participación de las partes fuera adjudicada según consta en esa escritura. Finalmente, expresó que nunca representó a los señores Ríos y que estos fueron representados en el caso civil por la licenciada Moringlane Ruiz.

El 20 de agosto de 2018, referimos la Queja a la Oficina de Inspección de Notarías (ODIN) y al Procurador General para que rindieran sus informes.

Así las cosas, el 13 de diciembre de 2018 la ODIN rindió su Informe para la consideración de este Tribunal. Luego de hacer un recuento de los hechos expuestos, la ODIN determinó, en lo pertinente, que la licenciada Peña Osorio autorizó la Escritura Núm. 18 de 2004 sobre Compraventa, a pesar de que conocía que dicho instrumento público no podría ser inscrito en el Registro de la Propiedad, debido a las circunstancias existentes en ese entonces, sin hacer una advertencia expresa sobre los efectos de realizar dicha transacción. La

ODIN expresó que, a su entender, era necesario que la licenciada Peña Osorio consignara de manera expresa en la escritura que autorizó, las advertencias relacionadas con la situación registral del inmueble objeto de la compraventa y los efectos de esa situación en el negocio jurídico celebrado. Precisó que: "[d]entro de las circunstancias del otorgamiento de la Escritura Núm. 18 de 2004, **era imperante que tales advertencias formaran parte del documento descrito por las partes**".[4] (Énfasis en el original). Además, resaltó la importancia de incluir las referidas advertencias en un caso como el de autos, al expresar que:

> Aunque la Promovida Peña Osorio alegó en su Contestación que orientó a los otorgantes sobre la situación registral del inmueble que fue objeto de la Compraventa, los Promoventes Ríos alegan que ellos contrataron dicha notaria para que realizara el trabajo completo del otorgamiento y la presentación de la escritura pública en el Registro de la Propiedad. Dicha discrepancia demuestra aún más la necesidad de que las advertencias en torno a los efectos de la situación registral del inmueble sobre el negocio jurídico objeto de la escritura se hicieran constar expresamente en el instrumento.[5]

Así, la ODIN opinó que, al dejar de incluir las referidas advertencias en el instrumento público autorizado, la licenciada Peña Osorio incurrió en una infracción al Artículo 15 (f) de la Ley Notarial, *supra*, y al Canon 18 de Ética Profesional, *supra*.

Por otro lado, la ODIN determinó que la licenciada Peña Osorio violó, además, el Artículo 2 de la Ley Notarial,

---

[4] Informe rendido por la ODIN, págs. 21-22.
[5] Íd., pág. 22.

*infra*, y los Cánones 18, 35 y 38 de Ética Profesional, *supra*.

Ello, pues, a pesar de que los otorgantes le indicaron que ya habían efectuado la compraventa y entrega de dinero, y que solo interesaban otorgar la escritura para asegurar la transacción realizada, esta, no solo no hizo constar en el instrumento público que la transacción había sido realizada con anterioridad, sino que expresó en la escritura que la parte compradora entraba en inmediata posesión y disfrute del inmueble adquirido a través del instrumento público aludido, sin otro requisito o acto que dicho otorgamiento, aunque eso no era correcto. De esta forma, la ODIN señaló que:

> Al haberse otorgado una escritura pública de compraventa sobre un bien inmueble sin expresarse que las partes habían formalizado las correspondientes contraprestaciones previo al acto celebrado, **bajo la fe pública notarial que reviste su cargo, la aquí Promovida Peña Osorio plasmó por escrito la falsa impresión de que en realidad dicha entrega estaba ocurriendo en el acto de otorgamiento.** Ello constituye una infracción a la fe pública notarial dispuesta en el Artículo 2 de la Ley Notarial y, consecuentemente, a los Cánones 18, 35 y 38 de Ética Profesional, *supra*.[6] (Énfasis nuestro).

Por tanto, la ODIN —tras tomar en consideración que esta no es la primera ocasión en la que se dilucida un proceso disciplinario en contra de la licenciada Peña Osorio por su desempeño en la función notarial— recomendó que se decretara su suspensión del ejercicio de la Notaría por un (1) mes como mínimo y tres (3) meses como máximo.

---

[6] Íd., págs. 21-23.

El 14 de enero de 2019, notificamos una *Resolución* en la que le concedimos a la Oficina del Procurador General un término final de treinta (30) días para completar su investigación y someter su informe. Además, le proporcionamos veinte (20) días a la licenciada Peña Osorio para que se expresara sobre el Informe de la ODIN.

Así el trámite, el 20 de febrero de 2019, la Oficina del Procurador General presentó su Informe. Luego de hacer un recuento de los hechos fácticos del caso, el cual incluyó las incidencias procesales del Caso Civil Núm. NSCI200900589, según surgen del expediente de dicho caso, el Procurador General determinó que de las comparecencias de las partes y de la documentación examinada no surgía la prueba clara, robusta y convincente necesaria para iniciar un procedimiento disciplinario en contra de la licenciada Peña Osorio por el desempeño de esta en el ejercicio de la abogacía. No obstante, nos recomendó que evaluáramos la conducta notarial de la licenciada Peña Osorio a base de las conclusiones y recomendaciones que ODIN proveyó en su Informe.

Pasado el término concedido a la licenciada Peña Osorio sin que recibiéramos sus expresiones acerca del Informe de la ODIN, procederemos a resolver, no sin antes exponer el derecho aplicable.

## II

### -A-

Es conocido que los notarios son los profesionales del Derecho encargados de custodiar la fe pública notarial, la cual constituye un elemento indispensable en todo el modelo de autenticidad documental. *In re García Cabrera*, 2019 TSPR 36, 201 DPR ___ (2019); *In re Maldonado Maldonado*, 197 DPR 802, 810 (2017).

Al ejercer esa honorable función, los notarios dan fe y autentican, conforme a las leyes aplicables, los negocios jurídicos y actos extrajudiciales que ante ellos se realizan. Art. 2 de la Ley Notarial, *supra*. Así, al redactar las escrituras y documentos notariales, estos reciben e interpretan la voluntad de las partes, proveyéndole forma legal y confiriéndole autoridad. Íd.

Por consiguiente, hemos expresado que "la función que ejercen estos funcionarios va más allá de un legalizador de firmas autómata", *In re García Cabrera*, supra, pues conlleva "el deber inquebrantable de cerciorarse que el 'instrumento público cumpl[a] con todas las formalidades de la ley, que es legal y verdadero, y que es una transacción legítima y válida'". Íd. (citando a *In re Torres Alicea*, 175 DPR 456, 460 (2009)).

La tarea de custodiar la fe pública notarial conlleva una serie de deberes y obligaciones. Como parte de esas obligaciones, hemos señalado que, previo a autorizar un instrumento público, los notarios tienen que llevar a cabo

un estudio de las circunstancias registrales de las propiedades. *In re Maldonado Maldonado*, supra, pág. 810; *In re Vera Vélez*, 148 DPR 1 (1999).

Además, hemos resaltado la importancia de que los notarios le proporcionen a los otorgantes las explicaciones, aclaraciones y advertencias necesarias, de manera que estos comparezcan al acto notarial con pleno conocimiento del negocio jurídico que celebran. *In re Maldonado Maldonado*, supra, pág. 810 (citando a *In re Torres Alicea*, supra, págs. 460-461).

El deber de proveer las advertencias necesarias a los otorgantes se encuentra consignado en el Art. 15(f) de la Ley Notarial, 4 LPRA sec. 2033, el cual establece que los notarios deberán "haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes" y que, **"se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente"**. (Énfasis nuestro). Así, hemos señalado que, al determinar las advertencias que se harán constar de manera expresa en el instrumento público, los notarios deberán considerar el derecho positivo, la jurisprudencia, el contenido del negocio jurídico y las estipulaciones que son objeto de las escrituras. *In re Maldonado Maldonado*, pág. 811.; *In Re Palmer Ramos*, 195 DPR 245 (2016).

En ese sentido, en *In re Maldonado Maldonado*, supra, reiteramos lo siguiente:

para que se logre el consentimiento informado de los otorgantes, el notario debe advertirles sobre la conveniencia y necesidad de realizar un estudio de título. Ello brinda a los otorgantes la oportunidad de conocer la situación registral de la propiedad: entre otras cosas, quién consta como su titular registral, las cargas y los gravámenes que afectan la propiedad. Solo de esa manera se puede garantizar un consentimiento informado por parte de éstos. **Ahora bien, en el caso de que los otorgantes no quieran que se realice el estudio de título, el notario debe consignar en la escritura que les advirtió sobre la necesidad y conveniencia de que sí se hiciera. El incumplimiento con lo mencionado constituye una violación al imperativo de custodiar la fe pública notarial, con independencia de que esa haya sido o no la intención del notario.** (Énfasis nuestro). Íd., pág. 811. Véase, además, *Chevere v. Cátala*, 115 DPR 432, 445 (1984).

-B-

El Canon 18 del Código de Ética Profesional, 4 LPRA IX, C. 18, requiere que los abogados rindan una labor idónea de competencia y diligencia, al establecer que los miembros de la clase togada deben defender los intereses de su cliente de manera diligente, "desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". Íd.; *In re Maldonado Maldonado*, supra, pág. 811. Dichos "parámetros, aplican a los abogados en su función notarial y les exige, coetáneamente con la Ley Notarial y su reglamento, cerciorarse de que los actos y negocios jurídicos que autorizan cumplan cabalmente con las normas legales pertinentes". *In re García Cabrera*, supra, pág. 9.

De conformidad con dicho principio, hemos expresado que, como parte del ejercicio diligente de sus funciones, los notarios deben cerciorarse de que el instrumento público

que van a autorizar no posea defectos que impidan su inscripción en el Registro de la Propiedad. *In re Maldonado Maldonado*, supra, pág. 813; *In re Pacheco Pacheco*, 192 DPR 553, 564 (2015). Además, hemos puntualizado que "[e]l incumplimiento con esta norma se traduce en una violación a los cánones del Código de Ética Profesional, que amerita el ejercicio de nuestra facultad inherente de regular la profesión de la abogacía y, por ende, la imposición de medidas disciplinarias". *In re Maldonado Maldonado*, supra, pág. 813.

De otra parte, reiteradamente, hemos expresado que un abogado-notario actúa de manera contraria al Canon 18 del Código de Ética Profesional, *supra,* cuando infringe las disposiciones de la Ley Notarial. *In re García Cabrera*, supra. Así hemos determinado que, "una vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado". *In re García Cabrera*, supra. Véanse, además, *In re Maldonado Maldonado*, supra, pág. 813; *In re Ayala Oquendo*, 185 DPR 572 (2012); *In re Aponte Berdecía*, 161 DPR 94, 106 (2004).

De otra parte, el Canon 35 del Código de Ética Profesional, *supra*, establece los principios de sinceridad y honradez que deben ejercer todos los miembros de la profesión jurídica. Este dispone que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada" y, añade que "[n]o es

sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho". Además, requiere que el abogado se ajuste "a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas". Canon 35 del Código de Ética Profesional, *supra*.

De conformidad con dicho precepto ético, hemos determinado que "certificar o dar fe de un hecho falso por aquellos que ejercen la notaría es actuar en detrimento al referido precepto ético y, también, quebrantar la fe pública notarial que estos funcionarios están llamados a custodiar". *In re García Cabrera*, supra.

Por otro lado, el Canon 38 del Código de Ética Profesional, *supra,* impone a los abogados la obligación de "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión" y el deber de "evitar hasta la apariencia de conducta profesional impropia". Íd.

Con relación a este canon, en *In re García Cabrera,* supra, subrayamos lo siguiente:

> cuando los casos ante nuestra consideración tratan sobre notarios que faltan a la verdad y, por ende, a la fe pública notarial, hemos decretado que no es requisito 'que el notario haya faltado a la verdad intencionalmente para faltar a su fe notarial y al Canon 38, supra. [...] Su violación puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario'. (Énfasis omitido). *In re García Cabrera* (citando a *In re Pagani Padró*, 198 DPR 812 (2017)).

A continuación, aplicaremos el marco legal a los hechos ante nuestra consideración.

### III

Debemos determinar si la licenciada Peña Osorio infringió los Artículos 2 y 15(f) de la Ley Notarial, *supra*, así como los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. Contestamos en la afirmativa. Exponemos.

Según señaláramos, la licenciada Peña Osorio autorizó la Escritura Núm. 18 de 2004, sobre compraventa, por medio de la cual la señora Feliciano García vendió a los señores Ríos un solar. Dicho solar fue objeto de la segregación realizada a través de la Escritura Núm. 27 de 1994, la cual fue autorizada por el licenciado Colón Ortiz. Tal como expusimos en la relación de hechos, esta última contaba con una serie de defectos que impidieron su entrada al Registro de la Propiedad, lo que ocasionó que el instrumento autorizado por la licenciada Peña Osorio tampoco pudiera ser inscrito.

En su Contestación a la Queja, la licenciada Peña Osorio afirmó que, previo autorizar la Escritura Núm. 18 de 2004, conocía que la misma no podría tener acceso al Registro. Además, expresó que "las partes[,] luego de ser orientadas[,] optaron por preparar la escritura aunque no entrara al Registro[,] porque ya hab[í]an hecho la compraventa y entrega de dinero y deseaban asegurar la transacción que hab[í]an realizado con anterioridad".[7]

---

[7] Contestación a la Queja, pág. 1.

Al examinar la Escritura Núm. 18 de 2004, notamos que la licenciada Peña Osorio hizo constar que el inmueble objeto de la compraventa no constaba inscrito en el Registro de la Propiedad.

No obstante, como bien señaló la ODIN en su Informe, a pesar de que la licenciada Peña Osorio expresó que orientó a las partes sobre la imposibilidad de inscribir la Escritura Núm. 18 de 2004, no consta en el instrumento público autorizado por esta, una advertencia expresa sobre la situación registral del inmueble y sus efectos sobre el negocio jurídico.

El Artículo 15(f) de la Ley Notarial, *supra*, establece, en lo pertinente, que los notarios consignarán en el instrumento público **"aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente"**. (Énfasis nuestro).

En ese contexto, hemos señalado que, al decidir qué advertencias harán constar de manera expresa en el instrumento público, los notarios deberán considerar el derecho positivo, la jurisprudencia, el contenido del negocio jurídico y las estipulaciones que son objeto de las escrituras. *In re Maldonado Maldonado*, pág. 811; *In Re Palmer Ramos*, 195 DPR 245 (2016).

Debido a la importancia que tiene el que los otorgantes cuenten con un consentimiento informado, hemos expresado que los notarios deben advertirles sobre la conveniencia y necesidad de realizar un estudio de título y que, en el caso

de que los otorgantes no quieran que se realice el estudio de título, el notario debe consignar en la escritura que les advirtió sobre la necesidad y conveniencia de que sí se hiciera. Íd.

Coincidimos con la ODIN respecto a que, dada la importancia que acarreaba, la licenciada Peña Osorio debió consignar en la Escritura Núm. 18 de 2004, una advertencia sobre la situación registral del inmueble y sus efectos sobre el negocio jurídico que se estaba celebrando. Así, concluimos que, el contenido del negocio jurídico y las circunstancias particulares del caso, debieron mover el juicio prudente de la licenciada Peña Osorio a hacer constar expresamente la referida advertencia en el instrumento público.

De otra parte, según señalamos, en su Contestación a la Queja, la licenciada Peña Osorio expresó que los otorgantes de la Escritura Núm. 18 de 2004 habían realizado la compraventa y la entrega del dinero antes de otorgar dicho instrumento. No obstante, a pesar de que la licenciada Peña Osorio indicó en el instrumento que el precio de la compraventa había sido entregado previo al acto de otorgamiento, no expresó que la transacción había sido realizada con anterioridad. Lo que es más, en la escritura se expresó que mediante su otorgamiento la parte compradora "entra[ba] en la inmediata posesión y disfrute del inmueble

que mediante la presente escritura adquieren, sin otro requisito o acto que el presente otorgamiento".[8]

Como es de notar, por medio de dicha actuación, la licenciada Peña Osorio hizo constar información falsa en el instrumento público que autorizó. Al así actuar, violó la fe pública notarial preceptuada en el Artículo 2 de la Ley Notarial, *supra*. Asimismo, dicha actuación fue contraria a los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra.*

IV

Para determinar la sanción que debemos imponer en el presente caso, habremos de considerar los siguientes factores: (1) la reputación del letrado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) el resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. *In re García* Cabrera, supra; In *re Pagani Padró*, 198 DPR 812, 826-827 (2017).

Al considerar los factores enumerados, debemos resaltar que esta no es la primera vez en la que se conduce un proceso disciplinario en contra de la licenciada Peña Osorio por su desempeño en su función notarial. Ello, en unión a las

---

[8] Escritura Núm. 18 de 2004, pág. 3.

actuaciones que son objeto del presente caso disciplinario, nos lleva a determinar la suspensión del ejercicio de la notaría de la licenciada Peña Osorio por un periodo de tres (3) meses.

V

Por los fundamentos que anteceden, suspendemos por tres (3) meses a la licenciada Peña Osorio de la práctica de la notaría.

La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres años después de su terminación en cuanto a actos realizados por la licenciada Peña Osorio durante el periodo en que la misma estuvo vigente.

El Alguacil de este Tribunal deberá incautar inmediatamente la obra protocolar y sello notarial de la letrada y entregarlos al director de la ODIN.

Notifíquese personalmente.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Sandra I. Peña Osorio<br>TS-6372 | AB-2018-0132 | |
|---|---|---|

SENTENCIA

En San Juan, Puerto Rico, a 14 de junio de 2019.

Por los fundamentos que anteceden, suspendemos por tres (3) meses a la Lcda. Sandra I. Peña Osorio de la práctica de la notaría.

La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres años después de su terminación en cuanto a actos realizados por la licenciada Peña Osorio durante el periodo en que la misma estuvo vigente.

El Alguacil de este Tribunal deberá incautar inmediatamente la obra protocolar y sello notarial de la letrada y entregarlos al director de la ODIN.

Notifíquese personalmente.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo