EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Analina Feliciano Caraballo<br><br>Demandante-recurrida<br><br>vs.<br><br>Julián Ross Tuggo, et als.<br><br>Demandado-Peticionario | Certiorari<br><br>2005 TSPR 133<br><br>165 DPR \_\_\_\_ |

Número del Caso: CC-2003-440

Fecha: 15 de septiembre de 2005

Tribunal de Circuito de Apelaciones:

        Circuito Regional de San Juan Panel II

Juez Ponente:

        Hon. Dora T. Peñagarícano Soler

Abogado de la Parte Recurrida:

        Lcdo. José L. Rodríguez Mangual

Abogado de la Parte Peticionaria:

        Lcdo. Luis E. Dubon, III

Materia: Daños y Perjuicios; Incumplimiento de Contrato

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Analina Feliciano Caraballo

    Demandante-recurrida

       vs.              CC-2003-440       CERTIORARI

Julián Ross Tuggo, et als.

    Demandado-peticionario

PER CURIAM

San Juan, Puerto Rico, a 15 de septiembre de 2005

El 12 de septiembre de 1991, el Lcdo. Luis Dubón III actuó como notario autorizante de la escritura de compraventa número ochenta y cinco (85) en la cual comparecieron, como parte compradora, la señora Analina Feliciano Caraballo y como parte vendedora, el matrimonio compuesto por Julián Ross Tuggo y Lillian Andino Bonilla[1]. En virtud de la referida escritura, Felicliano Caraballo adquirió una propiedad ubicada en la Urbanización University Gardens de Río Piedras perteneciente a los esposos Ross-Bonilla.[2]

---

[1] Estos últimos son residentes del estado de Nueva York.

[2] El precio de venta de la propiedad fue de noventa mil dólares ($90,000).

En la escritura el licenciado Dubón III hizo constar:

> Que la propiedad se halla libre de cargas y
> gravámenes por sí y afecta por su procedencia a
> condiciones restrictivas, servidumbre a favor de
> la finca de los esposos Clar-Bassó; servidumbre
> de paso a favor de siete (7) parcelas;
> servidumbre a favor de la Autoridad de Fuentes
> Fluviales; servidumbre a favor de la Autoridad de
> Acueductos y Alcantarillados y servidumbre a
> favor del Gobierno de la Capital.

Es menester destacar que, para hacer esta afirmación, el notario realizó un estudio de título en el Registro de la Propiedad. El referido estudio, el cual es de 2 de agosto de 1991, fue mostrado y examinado por las partes antes del otorgamiento de la escritura.

En la escritura de compraventa otorgada se hizo, específicamente, constar que:

> Convienen las partes comparecientes que el pago
> de las contribuciones territoriales adeudadas
> sobre la propiedad objeto de compraventa hasta la
> fecha de este otorgamiento será por cuenta de los
> VENDEDORES y por cuenta de la COMPRADORA el pago
> de aquellas que se le impongan a partir de esta
> fecha en adelante.[3]

El 30 de enero de 1997, seis años después de otorgarse la escritura, el Centro de Recaudación de Ingresos Municipales (CRIM) efectuó un requerimiento de pago de deuda contributiva y notificó a la señora Feliciano Caraballo una deuda por concepto de contribuciones territoriales de la

---

[3] Véase la Cláusula Cuarta de la sección de Cláusulas y Condiciones de la referida escritura.

propiedad objeto de la compraventa ascendente a $23,190.24, correspondiente a los años 1980-1981 hasta el 1991-1992.[4]

El 21 de marzo de 2001, Feliciano Caraballo presentó demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el notario Luis Dubón III[5], el matrimonio Ross-Bonilla y la Sociedad Legal de Gananciales compuesta por ambos. Alegó, contra los codemandados Ross-Bonilla que estos incumplieron con su obligación de pagar dichas contribuciones tal y como fue pactado en la escritura. Contra el notario Dubón III, alegó que éste venía obligado --bajo su fe notarial-- de asegurarse que dicha propiedad estaba libre de cargas y gravámenes antes de afirmar lo contrario. En virtud de ello, sostuvo que los codemandados le responden solidariamente por el pago de contribuciones sobre la propiedad objeto de la compraventa.[6]

---

[4] Del estudio de título realizado no surgía la referida deuda. Es de notar, además, que la deuda contributiva notificada por el CRIM corresponde a los años anteriores al otorgamiento de la escritura, por lo cual, según la escritura, el pago de las mismas correspondía a los vendedores, los esposos Ross-Bonilla.

[5] Se incluyó además a su esposa, Beatriz Vázquez de Dubón y a la Sociedad Legal de Gananciales compuesta por ambos.

[6] Surge del expediente que la señora Feliciano hizo varios requerimientos de pago al licenciado Dubón III. Ante los mismos, el licenciado le indicó que debía reclamarle el pago a los esposos Ross-Bonilla, tal y como lo habían pactado en la referida escritura. Ello no obstante, no surge que la señora Feliciano hubiere realizado intento alguno de recobrar el pago de la deuda de los esposos Ross-Bonilla antes de instar la presente acción.

El licenciado Dubón III contestó la demanda negando las alegaciones fundamentales de la misma.[7] Adujo, como defensa afirmativa, que él había actuado conforme a derecho y que le había hecho las advertencias pertinentes a las partes.

Así las cosas, el codemandado Dubón III presentó una moción de sentencia sumaria. En la referida moción alegó, en síntesis, que había hecho las advertencias correspondientes a las partes y que la parte demandante suscribió la escritura con pleno entendimiento de lo que estaba pactando. Señaló, que en ningún momento se había obligado a realizar una investigación sobre la situación contributiva de la propiedad. Alegó, además, que surgía claramente de la referida escritura que las partes habían convenido la forma específica en que se pagarían las contribuciones territoriales que se adeudasen a la fecha del otorgamiento; que dicha obligación recaía, según surgía expresamente de la escritura, en los codemandados, el matrimonio Ross-Bonilla. Conforme a ello, sostuvo que la referida cláusula le libera de responsabilidad. Por tal razón, Dubón III solicitó del foro primario que dictase sentencia sumaria a su favor y desestimara la demanda presentada contra él, su esposa y la sociedad legal de gananciales compuesta por ambos.

La demandante Feliciano Caraballo se opuso a la referida moción. En síntesis, alegó que cuando un notario afirma, bajo su fe notarial, que no existen deudas ni

---

[7] Los codemandados esposos Ross-Bonilla nunca contestaron la demanda por lo cual el foro primario, a solicitud de la parte demandante, procedió a anotarles la rebeldía.

gravámenes sobre la propiedad objeto de la compraventa cuando la realidad es otra, éste está sujeto a responder de forma solidaria por los daños y perjuicios ocasionados por proveer información incorrecta sobre la verdadera situación de la propiedad. Argumentó, que de haber conocido que la referida propiedad tenía esa deuda, no hubiese comprado la misma, o de haberla comprado, no hubiese pagado el precio que pagó. Sostuvo, además, que la acción del licenciado Dubón constituyó una violación a la fe notarial y al Canon 25 de Ética Profesional.

Posteriormente Feliciano Caraballo presentó una moción de sentencia sumaria ante el foro primario solicitando que, por no haber controversia de hechos, debía dictarse sentencia sumaria a su favor.

El 13 de agosto de 2002, el foro primario emitió una resolución en la cual declaró con lugar la moción de sentencia sumaria presentada por la demandante Feliciano Caraballo. Indicó que los codemandados Julián Ross Tuggo, su esposa, Lillian Andino Bonilla y Luis E. Dubón III, este último, en su capacidad de notario otorgante de la referida escritura de compraventa, eran responsables de forma solidaria por los daños y perjuicios sufridos por la demandante. Resolvió el foro de instancia, que el licenciado Dubón III era responsable como resultado de haber afirmado falsamente bajo la fe notarial en dicha escritura, que la propiedad estaba libre de deudas y gravámenes, cuando la realidad era que existía la referida deuda a favor del CRIM.

El referido foro indicó, además, que el notario autorizante pudo haber conocido de la deuda por medio de una simple investigación en dicha agencia, como era la obligación y responsabilidad del notario, independientemente de que ninguna de las partes la hubiere solicitado o que el notario no se hubiere ofrecido a realizar investigación alguna a esos efectos[8].

Inconforme con tal determinación, el codemandado Dubón III, acudió --mediante recurso de *certiorari*-- ante el Tribunal de Apelaciones, alegando como error que el foro primario declarase no ha lugar la moción de sentencia sumaria por él presentada y al haber concluido que él respondía a la parte demandante por el pago de la deuda contributiva y por los daños que ésta hubiese podido sufrir.[9]

El 28 de abril de 2003, el foro apelativo intermedio dictó sentencia confirmando la resolución emitida por el tribunal de instancia. Indicó, que la cláusula en la cual las partes indicaban la forma en que se pagarían las contribuciones territoriales no relevaba a Dubón III de responsabilidad ya que éste había incumplido con las normas notariales y la fe pública notarial al afirmar como notario un hecho que estaba reñido con la realidad al momento de otorgar la escritura. En consecuencia, el foro apelativo

---

[8] Es de notar, que el Tribunal de Primera Instancia postergó la determinación de daños.

[9] Los codemandados, señor Ross Tuggo y señora Andino Bonilla no recurrieron ante el foro apelativo intermedio en revisión de la referida resolución.

resolvió que el codemandado Dubón III respondía solidariamente con los vendedores de la propiedad gravada.

Aún inconforme, Dubón III recurrió --vía *certiorari*-- ante este Tribunal, imputándole al foro apelativo intermedio haber errado al confirmar al tribunal de instancia, imponiéndole responsabilidad por el pago de las contribuciones territoriales sobre la propiedad de la demandante, Feliciano Caraballo.

<u>Expedimos</u> el recurso. Contando con la comparecencia de todas las partes y estando en posición de resolver el mismo, procedemos a así hacerlo.

I

En reiteradas ocasiones este Tribunal ha expresado que el notario es el custodio de la fe pública; la misma es la espina dorsal de todo el esquema de autenticidad documental. <u>In re Rivera Vázquez</u>, res. el 10 de octubre de 2001, 2001 T.S.P.R. 138; <u>In re Peña Clos</u>, 135 D.P.R. 590 (1994); <u>In re González González</u>, 119 D.P.R. 496 (1987).

El Artículo 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec.2002, consagra el principio de la fe pública notarial. La mencionada disposición establece que:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos.

> La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

La figura del notario es sumamente importante para la estabilidad de los negocios jurídicos. In re Rivera Vázquez, ante; In re Feliciano Ruiz, 117 D.P.R. 269 (1986). Por tal razón, la fe pública notarial le impone al notario el deber de ser diligente en su gestión y de asegurarse de cumplir con todas las solemnidades de ley al autorizar instrumentos públicos. In re Rivera Vázquez, ante. La fe pública del notario es plena respecto a los hechos que, en el ejercicio de su función, personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. In re Tejada Rivera, res. el 24 de septiembre de 2001, 2001 T.S.P.R. 136.

En In re Tejada Rivera, ante, expresamos que el Estado, le confiere a un documento autorizado por un notario, bajo su firma, signo, sello y rúbrica, una presunción de credibilidad y certeza de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad. Indicamos, a su vez, que por la importancia de su deber como custodio de la fe pública inherente a su profesión, la sanción a ser impuesta por una violación a dicha responsabilidad debe ser severa por la gravedad de la falta envuelta. Esto, por razón de que faltar a la veracidad de los hechos es una de las faltas más graves que puede cometer un notario, ya que la certificación de un hecho falso constituye un acto

detrimental de la fe pública. In re Peña Clos 135 D.P.R. 590; In re Landing; y Aulet, 107 D.P.R. 103 (1978); In re Cruz Tollinche, 105 D.P.R. 500 (1976); P. Malavet Vega, Manual de Derecho Notarial Puertorriqueño, Santo Domingo, Ed. Corripio, 1988.

Por tal razón, constituye una de las faltas más graves que puede cometer un notario, el faltar a la veracidad de los hechos. El notario público que falta a la verdad en el otorgamiento de un instrumento público no sólo quebranta la fe pública notarial, sino que socava la integridad de la profesión legal y viola su deber de ser sincero y honrado, según dispuesto en el Código de Etica Profesional. In re Rivera Vázquez, res. el 10 de octubre de 2001, 2001 T.S.P.R. 138.

Por consiguiente, es deber del notario que autoriza el otorgamiento de una escritura, en cumplimiento de las responsabilidades atinentes a la profesión hacer las averiguaciones mínimas que requieren las normas de la profesión. In re Peña Clos, ante, a la pág. 601; In re Del Río Rivera y Otero Fernández, 118 D.P.R. 339 (1987). Por lo que en aquellas ocasiones en que el notario tenga duda sobre lo expresado por el otorgante, será su deber indagar más allá de lo requerido comúnmente. In re Vera Vélez, 148 D.P.R. 1 (1999).

En lo referente a las averiguaciones mínimas que debe realizar el notario hemos expresado que, "el notario que autoriza una escritura no puede ignorar el estado registral

de la propiedad sobre la cual las partes otorgan la escritura a la fecha del otorgamiento". Ibid. Es indeclinable su obligación de conocer el _estado registral_ de la propiedad en su función principal de custodio de la fe pública, base esencial del sistema del notariado. Como tal, tiene el deber ineludible de _ilustrar_ a los otorgantes para lograr que éstos concurran al acto notarial en un estado de conciencia informada. Es decir, tiene que cerciorarse de hacerles a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes. _In re Pizarro Colón_, 151 D.P.R. 94, 106 (2000); _In re Jiménez Brackel_, 148 D.P.R. 287 (1999).[10] El notario que autorice una escritura de compraventa y haga constar en la misma que la propiedad se halla libre de cargas y gravámenes, _cuando este hecho sea contrario a la realidad registral_, viola la fe pública notarial y el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. _In re Moreira Avilán_, 147 D.P.R. 78 (1998).

Por tal razón, en el caso _In re Ramos Meléndez y Cabiya Ortiz_, 120 D.P.R. 796 (1988), expresamos que no actúa con el debido cuidado, al ejercer la función notarial, el notario que hace constar en la escritura otorgada que la propiedad

---

[10]   Según lo resuelto en _In re Lavastida_, 109 D.P.R. 45 (1979), el notario que autoriza una escritura de hipoteca viene obligado, cuando menos, a "advertir cumplidamente a los otorgantes de la necesidad de la investigación registral' y si éstos advertidos cabalmente, pasan por alto la pesquisa, puede proceder sin más al otorgamiento del instrumento haciendo constar, para mayor garantía que tales advertencias han sido hechas". Pág. 80.

está libre de cargas y gravámenes, cuando este hecho es contrario a la realidad registral.[11]

En In re López Maldonado, 130 D.P.R. 863 (1992), hicimos hincapié en la importancia de que el notario haga una investigación de los antecedentes registrales de la propiedad antes del otorgamiento de una escritura y expresamos que viola la fe pública notarial el no hacer un estudio de título en el Registro de la Propiedad y proceder a preparar y autorizar una escritura, dando fe de hechos que no coinciden con la realidad registral.[12]

En In re Vera Vélez, ante, indicamos que los notarios no pueden escudarse bajo "los dichos" de las partes para certificar como ciertos hechos que les consten ser falsos o que debieron parecerles falsos y consignar hechos contrarios a los que consten en el Registro de la Propiedad; razón por la cual constituye una violación a la fe pública notarial que un notario, al autorizar una escritura, haga constar hechos falsos, que no coincidan con la realidad registral.

Ahora bien, en ninguna de nuestras decisiones le hemos impuesto la obligación al notario de realizar una investigación, sobre contribuciones adeudadas ante el CRIM,

---

[11] En el referido caso, el notario consignó este hecho confiando en un estudio de título hecho tres meses antes de autorizar la escritura en cuestión.

[12] En este caso indicamos que viola la fe pública notarial el notario que da fe de que se hace un traspaso de una finca, cuando en realidad el traspaso es de un solar segregado y aún no inscrito y no sobre la finca descrita; y que además viola la fe notarial dar fe en una escritura de que la finca está inscrita a nombre de una persona cuando de los libros del registro de la propiedad surge que el verdadero propietario es otro.

o ante el Municipio, esto es, sobre la existencia de contribuciones territoriales antes de autorizar una escritura de compraventa.

II

Además de la acción disciplinaria a la que puede estar sujeto un notario por violación a los deberes inherentes de la profesión, un notario puede responder civilmente cuando cause un daño a su cliente y este daño emane de la negligencia y descuido en el ejercicio de la gestión notarial. Sobre la naturaleza de la responsabilidad civil, en Chévere v. Cátala, ante expresamos que la misma será extracontractual cuando el notario provoca algún daño por haber violado una obligación que la ley le impone; será contractual cuando el daño tenga su origen en el quebrantamiento de una obligación que la ley no le impone al notario, pero que éste asume contractualmente. E. Martínez Moya, Derecho Notarial y Registral Inmobiliario, 64 Rev.Jur.U.P.R. 873 (1995).

En Rosas González v. Acosta Pagán, 134 D.P.R. 720 (1993), se demandó a un abogado en daños por dejar de inscribir una escritura de hipoteca en el Registro de la Propiedad luego de haberse comprometido con el demandante a así hacerlo. Indicamos que, aun cuando no había disposición alguna en la ley notarial que impusiera en el notario la obligación de presentar documentos en el Registro de la Propiedad como parte de sus funciones inherentes, si el

notario <u>convenía</u> con el cliente que se encargaría de presentar los documentos, entonces la referida obligación era una contractual, y el notario podría responder por su incumplimiento.

Sobre el cumplimiento de las funciones inherentes del notario, expresamos en <u>Romero</u> v. <u>Reyes Rivera</u>, res. el 28 de abril de 2005, 2005 T.S.P.R. 58,[13] <u>que en el desempeño de su gestión notarial el abogado está obligado a cumplir con los deberes que surgen de la ley, los Cánones de Ética Profesional y el contrato entre las partes</u>. La inobservancia de esos deberes expone al notario a una posible acción en daños <u>por los perjuicios causados</u> al cliente o a terceros, y a nuestra jurisdicción correctiva y disciplinaria.

III

En el presente caso, el notario Luis Dubón III <u>cumplió</u> con la responsabilidad que, <u>a la fecha del otorgamiento de la escritura en controversia</u>, le imponía la Ley Notarial y nuestra jurisprudencia, esto es, la obligación de cotejar el estado registral de la propiedad a ser transferida. No surgiendo del estudio de título realizado información alguna que impidiera, o hiciera dudoso, el otorgamiento de la escritura de compraventa[14], el licenciado Dubón III hizo correctamente constar en la misma que la propiedad estaba

---

[13] Citando a <u>In re Cruz Tollinche</u>, 114 D.P.R. 205, 207 (1983).

[14] La deudas por concepto de contribuciones de la propiedad <u>no</u> surgen —de ordinario— de las constancias del Registro de la Propiedad.

libre de cargas y gravámenes, ello, repetimos, acorde con lo hasta esa fecha requerido por la ley y la jurisprudencia en nuestra jurisdicción.

En protección de todas las partes otorgantes, el notario Dubón III hizo constar, en forma expresa y precisa, en la escritura que otorgó la forma y manera en que se pagarían las contribuciones territoriales; en relación con las cuales, repetimos, la reglamentación vigente, aplicable al momento del otorgamiento de la escritura en controversia, no le imponía obligación al notario de realizar investigación alguna ante el CRIM.

Por otro lado, tampoco está en controversia el hecho de que, en ningún momento, el notario Dubón III se ofreciera --o contratara-- a realizar investigación alguna ante el CRIM sobre la existencia de deudas en concepto de contribuciones sobre la propiedad; razón por la cual no estamos ante el incumplimiento de una obligación contractual incurrida por el notario otorgante.

En el presente caso, la causa fundamental y única de los daños alegadamente sufridos por la parte demandante fue la actuación --al no informar la deuda por concepto de contribuciones de la propiedad-- de los vendedores Ross Bonilla y el incumplimiento de éstos con la cláusula en la escritura relativa al pago de dichas contribuciones. Dicha obligación, no hay duda, recae exclusivamente sobre ellos y

no sobre Dubón III, quien no es parte de la referida relación contractual.[15]

Erraron, en consecuencia, tanto el tribunal de instancia como el foro apelativo intermedio al imponerle responsabilidad en el presente caso al licenciado Dubón III. La responsabilidad por el pago de la deuda por contribuciones territoriales en el presente caso recae, repetimos, exclusivamente sobre quienes contractualmente se obligaron a así hacerlo: el matrimonio Ross-Bonilla.

IV

Ahora bien, como jurista, la responsabilidad notarial de hacer las reservas y advertencias legales pertinentes implica una gestión intelectual y una aplicación inteligente de los principios de derecho positivos y jurisprudenciales. Esa función no se da en el vacío; conlleva tomar en cuenta el contenido del negocio y el significado total e integral de las estipulaciones que se han de suscribir y consentir. *In re* Salas David, 145 D.P.R. 539 (1998).

Considerando que los hechos en el presente caso no son únicos y que, por el contrario, se puede tratar de una situación recurrente que perjudica a nuestros conciudadanos resolvemos que, a partir de la presente Opinión y Sentencia,

---

[15] Los contratos sólo producen efecto entre las partes que los otorgan y sus herederos; salvo en cuanto a éstos, el caso en que los derechos y obligaciones que proceden del contrato no sean transmisibles, o por su naturaleza, o por pacto o por disposición de la ley. Artículo 1209 del Código Civil, 31 L.P.R.A. sec. 3374.

los notarios que otorguen una escritura de compraventa sobre una propiedad inmueble deberán, <u>como parte de las advertencias que tienen el deber de hacerle a los otorgantes de las mismas</u>, informarle a éstos sobre la conveniencia de obtener una certificación sobre deuda contributiva del CRIM. <u>La norma hoy establecida, repetimos, es de carácter prospectivo</u>.

V

Por los fundamentos antes expuestos, procede dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y, en consecuencia, devolver el caso al Tribunal de Primera Instancia para la continuación de procedimientos consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Analina Feliciano Caraballo

    Demandante-recurrida

       vs.                         CC-2003-440      CERTIORARI

Julián Ross Tuggo, et als

    Demandado-peticionario

SENTENCIA

San Juan, Puerto Rico, a 15 de septiembre de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de procedimientos consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez, aun cuando está conforme con las Partes I, II y III de la ponencia, disiente de la Parte IV de la misma. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo