EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Roxanna I. Soto Aguilú (TS-15,968) | 2021 TSPR 162 208 DPR |
|---|---|

Número del Caso:  AB-2020-20


Fecha:  30 de diciembre de 2021


Abogado de la promovida:

    Por derecho propio


Oficina de Inspección de Notaría:

    Lcdo. Manuel E. Ávila de Jesús
    Director




Materia:  Conducta Profesional - Suspensión inmediata del ejercicio de la notaría por el término de un año por violación a los Cánones 18, 19 y 38 del Código de Ética Profesional; los artículos 2, 14 y 15 de la Ley Notarial, y los artículos 58, 63 y 95 de la Ley Hipotecaria de 1979.  La suspensión será efectiva 30 de diciembre 2021, fecha en que se le notificó a la abogada de su suspensión inmediata de la notaría.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Roxanna I. Soto Aguilú            AB-2020-0020
        (TS-15,968)

Conducta
Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 30 de diciembre de 2021.

Este Tribunal tiene la obligación de ejercer su poder inherente para suspender a una notaria por incumplir con los artículos 2, 14 y 15 de la Ley Notarial, 4 LPRA secs. 2002, 2032-2033; los artículos 58, 63 y 95 de la Ley Hipotecaria de 1979, secs. 2261, 2266 & 2361; la Sección 3434 del Código de Rentas Internas de 1994, así como los Cánones 18, 19 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Por los fundamentos que se exponen más adelante, suspendemos a la Lcda. Roxanna I. Soto Aguilú (licenciada Soto Aguilú o la notaria) del ejercicio de la notaría por un término de un año. Veamos los hechos que originaron la queja.

**I**

La licenciada Soto Aguilú fue admitida al ejercicio de la abogacía el 29 de agosto de 2006 y a la práctica de la notaría el 22 de septiembre del mismo año.

El proceso disciplinario de epígrafe surgió como consecuencia de una queja que presentó la Sra. Maribel Burgos Correa (señora Burgos Correa) el 13 de febrero de 2020 donde indicó que compareció como parte compradora, en conjunto con su esposo Héctor Germán Rodríguez y el matrimonio compuesto por Antonio Santiago Correa y Mildred Raquel Rivera Santiago, en una escritura de compraventa que la licenciada Soto Aguilú autorizó el 15 de marzo de 2007 (Escritura Núm. 1 de 2007). Sostuvo que en el 2009 le solicitó a la licenciada Soto Aguilú por vía de correo electrónico una copia de la Escritura Núm. 1 de 2007 con la intención de presentarla en el Registro de la Propiedad (en adelante "el Registro") para la inscripción correspondiente. Alegó que reiteró dicha petición a la notaria mediante correos electrónicos y que ella no respondió.

Añadió que, posteriormente, en el 2017 le requirió a la notaria los documentos que acreditaran el tracto registral del inmueble objeto de la Escritura Núm. 1 de 2007. Expresó que, de acuerdo con una certificación registral obtenida el 22 de enero de 2016, las personas que comparecieron como integrantes de la parte vendedora[1] no

---

[1] Por la parte vendedora comparecieron Pilar María Martínez Rivera, Antonio Torres Martínez, Iris Minerva Torres Martínez, María Magdalena

constaban en los acervos del Registro como titulares, por lo que, la compraventa no era inscribible si no se acreditaba el tracto. Específicamente, la señora Burgos Correa solicitó el testamento o declaratoria de herederos del Sr. Ramón Torres Santiago quien aparecía como titular de la propiedad, el Relevo del Departamento de Hacienda y la instancia registral. Alegó que insistió en dicha petición por medio de varios correos electrónicos y que la licenciada Soto Aguilú no respondió.

Así las cosas, la señora Burgos Correa le imputó a la licenciada Soto Aguilú haberla inducido a error al autorizar un instrumento público sin corroborar el trámite registral del inmueble objeto de la compraventa. En particular, sin que los integrantes de la Sucesión Torres Santiago hubieran presentado ante el Registro la correspondiente instancia para inscribir su derecho hereditario sobre el inmueble. Formuló que al haber autorizado el instrumento público sin que constara el derecho hereditario de la Sucesión Torres Santiago, la licenciada Soto Aguilú indujo a los otorgantes a realizar un negocio ilícito donde se desembolsó el pago de $70,000.00 por la adquisición de un bien inmueble que no le pertenecía a la parte vendedora. Igualmente, la señora Burgos Correa le imputó a la notaria haber autorizado la escritura sin que se hubiese presentado la Planilla de

---

Torres Martínez, quien falleció el 4 de noviembre de 2005 y solo tuvo un hijo de nombre Edgar Javier Fernández Torres (en adelante, "señor Fernández Torres"), quien compareció en la Sucesión Torres Santiago por alegado derecho de representación, Blanca Torres Martínez; y Nidra Torres Martínez.

Caudal Relicto en el Departamento de Hacienda, lo que ocurrió el 15 de diciembre de 2008, un año después de que se llevó a cabo el negocio.

Así las cosas, la señora Burgos Correa contrató a la Lcda. Mabel Martínez Serrano (en adelante, la "licenciada Martínez Serrano") para solucionar la situación registral que impedía la inscripción del bien inmueble a favor de la parte compradora. La licenciada Martínez Serrano se comunicó con la licenciada Soto Aguilú con el propósito de atender la situación informada y viabilizar la inscripción de la transacción recogida en la Escritura Núm. 1 de 2007. En esa comunicación le expresó que del instrumento público no surgía la información requerida para la inscripción en el Registro.[2] Igualmente, para el 2019 la señora Burgos Correa, por conducto de su representación legal, solicitó nuevamente a la licenciada Soto Aguilú los documentos para el trámite en el Registro.

La señora Burgos Correa aduce que como consecuencia de las fallas incurridas por la notaria al autorizar la Escritura Núm. 1 de 2007, no ha podido inscribir su cotitularidad del bien inmueble, adquirido hacía más de

---

[2] En dicha comunicación se reclamaba y cuestionaba lo siguiente:

> 1. la titularidad de la Sucesión Torres Santiago, sea declaratoria de herederos o testamento y certificación sobre testamento de ODIN;
> 2. el Relevo del Caudal Relicto de Hacienda con número de notificación y fecha;
> 3. si el derecho de representación que se expresaba en la escritura surge a través de declaratoria de herederos o en virtud de un testamento;
> 4. que no se identificaba la participación de los herederos ni la liquidación de la sucesión.

Informe de la ODIN del 7 de junio de 2021, p. 3.

catorce (14) años. Adicionalmente, manifestó que ha tenido que incurrir en gastos para segregar e instalar agua y luz, y, sobre todo, gastos legales para gestionar la inscripción registral. Hizo hincapié en que la responsabilidad de la situación es exclusivamente de la licenciada Soto Aguilú.

La licenciada Soto Aguilú contestó por medio de una *Moción Solicitando Desestimiento [sic] por Prescripción* donde alegó que procedía la desestimación de la queja al amparo del Artículo 1867 del Código Civil de 1930, 31 LPRA sec. 5297(5). El 30 de junio de 2020 este Tribunal denegó la moción de desestimación y refirió el asunto a la Oficina de Inspección de Notarías (ODIN) para la investigación e informe correspondiente.

En su informe la ODIN relata que para el 1996 el Sr. Ramón Torres Santiago otorgó un testamento abierto donde instituyó como herederos universales, por partes iguales, a sus cinco (5) hijos: Ramón Antonio, Iris Minerva, Nidra, María Magdalena y Blanca, todos de apellidos Torres Martínez. Además, mencionó que estaba casado con la Sra. Pilar María Martínez Rivera, siendo este su único matrimonio. Posteriormente, mediante sentencia de adjudicación de una herencia, el señor Torres Santiago adquirió con carácter privativo la propiedad inmueble que es objeto de la Queja ante nuestra consideración. El señor Torres Santiago falleció el 26 de junio de 1999.

El 15 de marzo de 2007 la licenciada Soto Aguilú autorizó la escritura de compraventa en controversia donde la fedataria expresó que comparecían por la parte vendedora

los integrantes de la Sucesión del Sr. Ramón Torres Santiago y los dos matrimonios mencionados como la parte compradora.

En la referida Escritura Núm. 1 de 2007 se consignó que el dominio de la propiedad objeto del negocio constaba inscrito a favor del Sr. Ramón Torres Santiago. La ODIN señala que en el instrumento no se indicó la fecha del fallecimiento del señor Torres Santiago ni se mencionó su certificado de defunción. Tampoco se identificó o describió el testamento o documento sobre declaratoria de herederos que estableciera el derecho hereditario de los integrantes de su sucesión ni el testamento o documento sobre declaratoria de herederos que estableciera el derecho de representación del señor Fernández Torres como hijo de la finada María Magdalena Torres Martínez, integrante de la Sucesión Torres Santiago. Así, la ODIN destaca que la notaria omitió establecer el tracto registral que acreditaba la titularidad del inmueble por los integrantes de la parte vendedora.

De igual modo, la ODIN indica que la licenciada Soto Aguilú instrumentó y autorizó el negocio jurídico sin que la parte vendedora obtuviera el correspondiente certificado de cancelación de gravamen que provee el Departamento de Hacienda sobre el caudal relicto del finado Torres Santiago y de la causante María Magdalena Torres Martínez. A su entender, dicha omisión provoca que el instrumento público autorizado por la licenciada Soto Aguilú incumpla con los requisitos dispuestos en la Ley Notarial, supra, y en las

leyes que inciden en el negocio jurídico celebrado para que este pueda ser presentado y gane acceso a los acervos que custodia el Registro.

Agrega que por más de una década desde la autorización de la Escritura Núm. 1 de 2007, la notaria desatendió las comunicaciones y los reclamos de la señora Burgos Correa para remediar la falta de inscripción en el Registro. En consecuencia, no se ha podido realizar un proceso de segregación de terreno para el cual ya se obtuvo la autorización de la Oficina de Gerencia de Permisos (OGPe) del Departamento de Desarrollo Económico y Comercio. Por lo anterior, la ODIN concluyó que la licenciada Soto Aguilú violó el Canon 19 de los Cánones de Ética Profesional, supra.

Igualmente, el informe de ODIN expone que no todos los que comparecieron como vendedores eran parte de la Sucesión de Torres Santiago porque en dicha escritura pública comparecieron personas integrantes de dos sucesiones: en primer lugar, de la Sucesión de Torres Santiago y, en segundo lugar, de la Sucesión de María Magdalena Torres Martínez. La licenciada Soto Aguilú, de acuerdo con ODIN, no esbozó de manera clara y precisa la forma en que los miembros de la parte vendedora advinieron titulares del bien inmueble objeto de la transacción. En particular, la notaria afirmó que el señor Fernández Torres compareció al acto por derecho de representación, sin que obrara documento alguno que acreditara tal aspecto.

La ODIN explica que como María Magdalena Torres Martínez falleció con posterioridad a su padre, el señor Torres Santiago, la notaria erró al expresar la existencia de un derecho de representación que justificaba la comparecencia del señor Fernández Torres. Dado que en el testamento abierto otorgado por el señor Torres Santiago no se menciona a su nieto, el señor Fernández Torres, no hubo ni siquiera derecho de sustitución. Para la ODIN, lo anterior viola el artículo 15 de la Ley Notarial, supra.

Asimismo, nos señala la ODIN que al no haberse acreditado los documentos que otorgaban la titularidad a los vendedores y debido a que de la Escritura Núm. 1 de 2007 surge información que es contraria a la realidad sobre la fuente de la titularidad de los vendedores con relación al derecho hereditario del señor Fernández Torres, se desprende una falta al debido cuidado y diligencia que debe procurar todo notario al autorizar instrumentos públicos. La ODIN deduce que lo anterior viola el artículo 2 de la Ley Notarial, supra, los artículos 58 y 95 de la derogada Ley Hipotecaria, supra, así como los Cánones 18, 35 y 38 del Código de Ética Profesional, supra.

Añade que la licenciada Soto Aguilú infringió la prohibición establecida en la entonces vigente Sección 3434 del Código de Rentas Internas de 1994, supra, pues no podía en aquel momento histórico autorizar el negocio jurídico ante la ausencia de los relevos que debió expedir del Departamento de Hacienda. Por si fuera poco, la ODIN enfatizó que la notaria aseveró que la propiedad objeto de

la transacción se encontraba libre de cargas y gravámenes, lo cual era incompatible con la realidad fiscal de la propiedad, de acuerdo con el CRIM.

Adiciona la ODIN que a pesar de que la notaria no se obligó a presentar la copia certificada del instrumento autorizado ante el Registro para su oportuna calificación e inscripción, no existía justificación para no cerciorarse de que el título de la parte vendedora tendría acceso al Registro y que no existiera impedimento para que el título de la parte compradora quedara inscrito. Expone la ODIN que el no hacer referencia a la necesidad de inscribir los derechos hereditarios de los integrantes de la parte compradora y el hecho de que el negocio jurídico quedase en suspenso hasta que los trámites correspondientes se efectuaran pudieron inducir a error y afectar el consentimiento prestado por las partes otorgantes. Por lo anterior, la ODIN concluye que la notaria infringió el artículo 15(f) de la Ley Notarial, supra.

Al momento en que la licenciada Soto Aguilú autorizó el instrumento público no se había presentado ni constaba inscrito en el Registro de la Propiedad el derecho hereditario de la Sucesión Torres Santiago. Tampoco se había obtenido en el Departamento de Hacienda el certificado de cancelación de gravamen o relevo del caudal relicto de la Sucesión Torres Santiago. Menos aún se consignó una advertencia a las partes otorgantes sobre la conveniencia y necesidad de obtener una certificación sobre deuda contributiva del CRIM.

Igualmente, no hubo una advertencia en dicho instrumento público con relación a las consecuencias de adquirir un terreno en comunidad de bienes pues la parte compradora estaba compuesta por dos matrimonios que adquirían el inmueble en común proindiviso. La ODIN hace hincapié en que no existe expresión en la Escritura Núm. 1 de 2007 sobre la necesidad de inscribir el derecho hereditario de los integrantes de la parte vendedora para conferir el tracto necesario para la presentación e inscripción del negocio jurídico instrumentado.

De la escritura pública se desprende que la licenciada Soto Aguilú advirtió a los comparecientes sobre lo referente a la presentación de Copia Certificada de la Escritura en el Registro de la Propiedad de Arecibo, Sección I, para la debida inscripción. No obstante, la ODIN relata que en el 2016 --casi 10 años después de que se autorizó la compraventa-- la notaria otorgó el Instrumento Público Núm. 4, sobre *Acta de Subsanación* donde hizo constar que, a pesar de haberle hecho las advertencias verbalmente a las partes otorgantes de varios instrumentos públicos que autorizó, no las incluyó de manera expresa. Allí la licenciada Soto Aguilú enunció que advirtió a las partes sobre la necesidad de realizar un Estudio de Título para así conocer las cargas y gravámenes que afectan al inmueble. La licenciada Soto Aguilú añadió que las partes la relevaban de toda responsabilidad ante la autoridad reguladora y disciplinaria del Tribunal Supremo.

A este tenor, la notaria también agregó en dicha *Acta de Subsanación* las siguientes advertencias: (1) que las partes eran responsables de presentar la escritura en el Registro; (2) que era responsabilidad de las partes presentar la Certificación de Deuda Contributiva ante el CRIM; (3) la necesidad de producir una Certificación del CRIM vigente que contenga el número de catastro; y (4) la importancia de que se haga constar la proporción perteneciente a cada matrimonio al adquirir en capacidad de comunero.

El informe de la ODIN agregó que la licenciada Soto Aguilú consignó en la Escritura Núm. 1 de 2007 que contó con un estudio de título realizado el 13 de marzo de 2007 por el investigador Daniel Muñiz Colón. Sin embargo, esta luego admitió a la ODIN que en el día del otorgamiento las personas otorgantes renunciaron voluntariamente a obtener un estudio de título. Por tanto, según la ODIN, la notaria violó el artículo 2 se la Ley Notarial, supra.

Por todo lo anterior, recomendó la separación inmediata e indefinida del ejercicio de la notaría o, en la alternativa, decretar su separación del ejercicio del notariado por un término no menor de un año por violar la fe pública notarial; los artículos 2, 14, y 15 de la Ley Notarial, supra, los artículos 58, 63 y 95 de la Ley Hipotecaria, supra, la Sección 3434 del Código de Rentas Internas, supra, y los Cánones 18, 19, 35 y 38 de Ética Profesional.

Ulteriormente, la licenciada Soto Aguilú compareció para reaccionar al Informe de la ODIN. Se allanó a todas las recomendaciones con excepción a la suspensión indefinida o temporal. Alegó a su favor que cooperó y compareció durante todo el proceso disciplinario porque tiene interés en resolver el asunto. Informó que le ha dado seguimiento a la Planilla de Caudal Relicto necesaria para poder inscribir la compraventa. Añadió que sufragó todos los gastos de presentación y está totalmente disponible para entregar y presentar en el Registro cualquier otro documento necesario.

## II.

### A. La deontología de la notaría

Los notarios y notarias de Puerto Rico tienen el deber de "ejercer una puntillosa función que robustece de seguridad y certeza jurídica los hechos y actos que se consignan bajo su fe notarial". L. F. Estrella Martínez, *El notariado latino en Puerto Rico como exponente de las aspiraciones del sistema jurídico iberoamericano*, 60 Rev. D. P. 547, 546 (2021). Como consecuencia de lo anterior, debemos colegir que los miembros de la comunidad notarial puertorriqueña no son meros autómatas en el sentido cartesiano de la palabra, pues su función no tan solo es la de legalizar las firmas, sino que tienen una obligación ética de comprobar que el instrumento público ante su presencia cumpla con la totalidad de las formalidades que exige el derecho positivo imperante en el ordenamiento.

*In re Peña Osorio*, 202 DPR 779, 789 (2019); *In re Torres Alicea*, 175 DPR 456, 460 (2009).

Las personas que ejercen la función notarial siempre deben ser conscientes que son juristas que tienen, por mandato deontológico y jurídico, un deber ineludible de instruir a los otorgantes las consecuencias de sus actos jurídicos. Deben, por ende, cerciorarse que la escritura que presentan ante las partes cumple con los requisitos necesarios para que la voluntad de los otorgantes se lleve a cabo. *In re* Pagani Padró, 198 DPR 812, 821 (2017).

De esta manera, los notarios poseen el deber forzoso de ejercer su función con excesivo cuidado, esmero y celo profesional. Id. pág. 820; *In re* Maldonado Maldonado, 197 DPR 802, 809 (2017); *In re* Pacheco Pacheco, 192 DPR 553, 562 (2015). Esto responde al marco deontológico esbozado y a la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los cánones del Código de Ética Profesional, 4 LPRA Ap. IX. *In re* García Cabrera, 201 DPR 902, 918 (2019); *In re* Palmer Ramos, 195 DPR 245, 254-255 (2016); *In re* Vargas Velázquez [II], 193 DPR 681, 693 (2015).

En particular, el Artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, funda el principio de la fe pública notarial:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin

perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. Id.

Lo anterior obliga a los miembros de la profesión legal juramentados como notarios o notarias a dar cumplimiento de la función notarial que representa la fe pública y la ley para todas las partes. *In re* Vázquez Margenat, 204 DPR 968 (2020). Al final de cuentas, el notario es un funcionario público y un profesional del Derecho a la misma vez. *In re* García Cabrera, 188 DPR 196, 207 (2013). Cabe destacar que el notario, como funcionario público, "da fe de lo que ve, oye y percibe por sus sentidos. Por otro lado, como jurista, autentica y formula un juicio, da fuerza probatoria a las declaraciones de voluntad de las partes en instrumentos y documentos públicos que debe redactar conforme a las leyes". Id. págs. 207-208. Por tanto, "[e]s evidente que el notario no es un simple observador del negocio jurídico que se realiza ante él". *In re* González Hernández, 190 DPR 164, 177 (2014).

Cuando un notario o notaria autoriza un instrumento público en Puerto Rico tiene cuatro deberes que se desprenden de nuestra jurisprudencia: primero, el notario o notaria debe indagar la voluntad de los otorgantes; segundo, formular la voluntad indagada; tercero, investigar ciertos hechos y datos de los que depende la eficacia o

validez del negocio, y cuarto, darles a los otorgantes la información, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias, del negocio, y se den cuenta de los riesgos que corren en celebrarlo. Chévere v. Cátala, 115 DPR 432, 438 (1984).

Como consecuencia de lo anterior, el Artículo 14 de la Ley Notarial, 4 LPRA sec. 2032, instituye que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia". A la par, como parte de su función notarial, es necesario que los notarios y notarias se aseguren de obtener el consentimiento informado de los otorgantes, por medio de la explicación, aclaración y advertencias necesarias. *In re Torres Alicea*, supra, pág. 461.

De la misma manera, el Artículo 15(f) de la Ley Notarial, 4 LPRA sec. 2033, le indica al notario o notaria el deber de consignar en la escritura, entre otras cosas, "[h]aberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente". Hemos hecho hincapié en que el notario "debe aplicar el derecho positivo y la jurisprudencia considerando, a su vez, el contenido del negocio y las estipulaciones que se

suscribirán al momento de decidir qué advertencias debe hacer constar", y por lo tanto, "tiene la obligación ética de conocer el derecho aplicable al asunto ante su consideración". *In re* Palmer Ramos, supra, pág. 256.

En vista de lo anterior, el encargo delegado a los notarios y notarias va atado a unos deberes éticos que debemos analizar.

## B. Incumplimiento con los cánones del Código de Ética Profesional

El Canon 18 del Código de Ética Profesional, *supra*, establece el deber que tienen los abogados y abogadas notarios o notarias de rendir una labor idónea de competencia y diligencia. *In re Maldonado Maldonado*, supra, pág. 812. De esta manera, los notarios públicos demuestran su conocimiento jurídico por medio de una ejecución correcta de sus funciones notariales. *In re Torres Rivera*, 204 DPR 1 (2020).

En múltiples instancias hemos repetido que el notario y la notaria, con asepsia ética ejemplarizante, debe ser el custodio de la fe pública notarial y, como tal, debe producir un instrumento público conforme a derecho. *In re Palmer Ramos*, supra, pág. 257. Es harto conocido en la comunidad notarial que el estudio de título no asegura que hayan sido inscritas otras cargas presentadas con posterioridad a la fecha en que este se realizó. *In re Torres Alicea*, supra, pág. 461.

Los notarios y notarias tienen el deber de investigar los antecedentes registrales de la propiedad antes de

otorgar la escritura pues si omitiese tal investigación o si no la hiciese conforme a los más altos estándares de diligencia y competencia, incumpliría con su deber de informar apropiadamente a los otorgantes. *In re López Maldonado*, 130 DPR 863, 865-866 (1992). Por lo tanto, hemos repetido que la falta de investigación apropiada y responsable es, en sí misma, una violación a la Ley Notarial de Puerto Rico. Id; *In re Pagani Padró*, supra, pág. 822; *In re Aponte Berdecía*, 161 DPR 94, 104 (2004).

**De igual forma, hemos resuelto que un notario o una notaria** infringe el Canon 18 cuando autoriza un instrumento sin corroborar las constancias registrales, pues con dicha conducta incumple con su deber de verificar si la escritura pública posee defectos que impidan su inscripción en el Registro de la Propiedad. *In re García Cabrera*, supra, págs. 925-926. Esa conducta activa una presunción irrebatible de que el notario no tuvo la competencia suficiente con relación a los negocios jurídicos autorizados. *In re Maldonado Maldonado*, supra, pág. 813; *In re Vargas Velázquez*, supra, pág. 694.

Además, los notarios están sujetos a lo dispuesto por el Canon 19 del Código de Ética Profesional, supra, que establece que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado", lo que se relaciona con la obligación de todo notario de prestar información. Es decir, que constituye un elemento "imprescindible en la relación fiduciaria que caracteriza

el vínculo abogado-cliente". *In re* Pietri Castellón, 185 DPR 982, 992 (2012). Por tanto, cuando un notario no advierte a los otorgantes sobre las circunstancias del negocio jurídico y sus efectos, infringe también el Canon 19. Recordemos que en *In re* Maldonado Maldonado, supra, pág. 818, expresamos que un notario incumplió con este canon al no mantener informada a la quejosa sobre el estado de la presentación de una escritura. El notario tiene el deber de "mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". *In re* García Cabrera, supra, pág. 928.

Asimismo, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX aplica a los notarios y notarias en Puerto Rico. En lo pertinente, el canon dispone lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. [...]

> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos.

Por tanto, si la controversia versa sobre la falta de competencia y diligencia por parte de un notario o notaria

y al mismo tiempo, se maltrecha la fe pública notarial, se viola también el canon 38. Hemos decretado que la violación a dicho canon "puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario". *In re* Sepúlveda Girón, 155 DPR 345, 363 (2001), *In re* Gordon Menéndez I, 171 DPR 210, 216 (2007).

## C. Competencia aplicable

Para determinar el grado de competencia aplicable, es necesario discutir cuál era el derecho que regía al momento que la licenciada Soto Aguilú autorizó el instrumento público objeto de controversia. En particular, debemos tener presente las disposiciones hipotecarias aplicables. El artículo 63 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, 30 LPRA sec. 2266 (derogada), vigente al momento de la autorización de la Escritura Núm. 1 de 2007, explica la responsabilidad del notario por omisiones o defectos en los instrumentos públicos del modo siguiente:

> El notario o funcionario que por su falta cometiere alguna omisión que impida inscribir el acto o contrato, conforme a lo dispuesto en la ley, subsanará prontamente, al ser requerido, extendiendo a su costo un nuevo documento, si fuere posible e indemnizando en todo caso a los interesados de los perjuicios que les ocasion[e] su falta.

Además, el artículo 58 de la referida legislación, en lo pertinente, disponía que "[n]o se inscribirá el documento de partición de bienes hereditarios o de transferencia o gravamen del derecho hereditario si antes no apareciere previamente inscrito el derecho hereditario a nombre de los

herederos". 30 LPRA sec. 2261. Conjuntamente, el artículo 95 de dicho cuerpo legal disponía en parte que "[e]l documento de la sucesión hereditaria, a los efectos del Registro, es aquel que contiene el testamento o la declaración de herederos abintestados, ya sea judicial o de conformidad con la Ley Núm. 282 de 21 de agosto de 1999, conocidas como la "Ley de Asuntos No Contenciosos Ante Notario". 30 LPRA sec. 2316.

Por añadidura, el Art. 887 del Código Civil de 1930, 31 LPRA sec. 2621 (derogado), disponía que el derecho de representación es "el que tienen los parientes legítimos o naturales legalmente reconocidos de una persona para sucederle en todos los derechos que tendría si viviera o hubiera podido heredar". Id. Sin embargo, en Calimano v. Calimano, 103 DPR 123 (1974), negamos aplicar la corriente expansionista y no permitimos el derecho de representación en la sucesión testada. En otras palabras, en la sucesión testada, al no existir el derecho de representación, opera la figura jurídica de la sustitución. Dado que el testador solamente tiene la figura de la sustitución testamentaria en los casos que puedan ocurrir potenciales vacantes de la herencia, no procede, por ser innecesaria e inaplicable la figura de la representación. Véase Carrillo Vázquez v. Rodríguez Cintrón, 202 DPR 714, 722 (2019).

Recordemos que el artículo 703 del Código Civil de 1930 establecía que "[p]uede el testador substituir una o más personas al heredero o herederos instituidos para el caso en que mueran antes que él, o no quieran, o no puedan

aceptar la herencia". 31 LPRA sec. 2301 (derogado). Además, el propio artículo 875 en su inciso tres disponía que la sucesión intestada tenía lugar "[c]uando falta la condición puesta a la institución de heredero, o éste muere antes que el testador, o repudia la herencia sin tener substituto y sin que haya lugar al derecho de acrecer". 31 LPRA sec. 2591 (derogado). En consecuencia, es un craso error por parte de un notario dar fe de que una persona comparece por derecho de representación en una sucesión testamentaria.

Por otro lado, la Sección 3434 del Código de Rentas Internas de 1994, que se encontraba vigente al momento de los hechos, prohibía a los notarios autorizar escrituras públicas de enajenación o venta de inmuebles del caudal relicto bruto sin que se hubiese antes obtenido el certificado de relevo de gravamen. Asimismo, a partir de Feliciano v. Ross, 165 DPR 649, 664 (2005), establecimos que "los notarios que otorguen una escritura de compraventa sobre una propiedad inmueble deberán, como parte de las advertencias que tienen el deber de hacer a los otorgantes, informarles a éstos sobre la conveniencia de obtener una certificación sobre deuda contributiva del CRIM".

**III.**

Nos corresponde determinar si la licenciada Soto Aguilú incumplió los artículos 2, 14 y 15 de la Ley Notarial, supra, los artículos 58, 63 y 95 de la Ley Hipotecaria de 1979, supra, la Sección 3434 del Código de Rentas Internas de 1994, así como los Cánones 18, 19 y 38

del Código de Ética Profesional, supra. Del expediente ante nuestra consideración se desprende que la licenciada Soto Aguilú infringió todos los artículos y cánones mencionados. Veamos.

La notaria hizo constar en la escritura de compraventa objeto de la queja que una de las herederas que componía la parte vendedora, María Magdalena Torres Martínez, falleció el 4 de noviembre de 2005, luego de que falleciera el titular de la propiedad. Por tal razón, consignó en la escritura que al acto comparecía su hijo, el señor Fernández Torres, como heredero del titular por un alegado derecho de representación. Sin embargo, la notaria omitió reconocer o describir en la escritura documento alguno que acreditara la cualidad de heredero del señor Fernández Torres. Particularmente, fue un error consignar que el señor Fernández Torres comparecía por derecho de representación cuando ese derecho no operaba en la sucesión testamentaria al momento de los hechos. Con base a lo anterior, podemos decir con certeza que no comparecieron como parte vendedora todos los integrantes de la Sucesión Torres Santiago, sino, personas integrantes de dos sucesiones.

Asimismo, la licenciada Soto Aguilú tenía el deber de consignar el derecho hereditario de todos los miembros de la Sucesión en la escritura. Particularmente, porque el inmueble estaba inscrito a nombre del causante, el señor Torres Santiago, y no a nombre de la sucesión. Recordemos que la escritura pública tiene que contener el negocio

jurídico que motiva su otorgamiento y sus antecedentes. Artículo 15 de la Ley Notarial, supra. Lo anterior denota falta de preparación e investigación al momento de otorgar el instrumento público. Además, ante la omisión de acreditar los documentos que otorgaban la titularidad a los vendedores y dado a la realidad contraria a lo dispuesto en la Escritura Núm. 1 de 2007 podemos deducir con seguridad una falta de cuidado y diligencia por parte de la notaria al momento de autorizar la compraventa.

Por si fuera poco, la licenciada Soto Aguilú omitió incluir en el instrumento público la fecha del fallecimiento del señor Torres Santiago; la descripción de la copia certificada del certificado de defunción expedida por el Registro Demográfico utilizado para constatar la información; los datos del testamento otorgado en vida por el señor Torres Santiago así como los pormenores relacionados en la Certificación expedida por el Registro de Testamentos de la ODIN; las particularidades con la Declaración de Herederos o Testamento de María Magdalena Torres Martínez, hija del señor Torres Santiago, así como la información que certificara el hecho de que el señor Fernández Torres era el único y universal heredero de ella; y los datos de inscripción de ambas instancias en el Registro. Todo lo anterior constituye una violación al Canon 18 del Código de Ética Profesional, supra, y los artículos 2 y 15 de la Ley Notarial, supra.

Además, la licenciada Soto Aguilú autorizó el instrumento público en controversia sin la correspondiente

certificación de gravamen sobre el caudal relicto del señor Torres Santiago y de María Magdalena Torres Martínez. Al autorizar dicha escritura sin obtener ambos relevos o certificaciones, la notaria incumplió con la prohibición establecida en la Sección 3434 del Código de Rentas Internas de 1994, supra, vigente en ese entonces.

Asimismo, la notaria omitió seguir lo que ordenamos en Feliciano v. Ross, supra, es decir, prescindió de las advertencias sobre la conveniencia de obtener una certificación sobre deuda contributiva del CRIM. Peor aún, aseveró en la escritura que la propiedad se encontraba libre de cargas y gravámenes lo que no era correcto pues, surge de la investigación de la ODIN que el inmueble mantenía un gravamen o deuda contributiva con el CRIM. De esta manera, la licenciada Soto Aguilú mancilló la fe pública notarial al dar fe de un hecho que no es verdadero. Es por ello que dicha conducta también infringió los artículos 2 y 14 de la Ley Notarial, supra, y los cánones 18 y 38 del Código de Ética Profesional, supra.

Igualmente, resaltamos que a pesar de que en años recientes la notaria realizó un acta de subsanación sobre la referida escritura pública, no fue hasta que transcurrió un poco más de una década desde la autorización del instrumento público que la licenciada Soto Aguilú actuó afirmativamente para atender el asunto. Desde el 2007 la señora Burgos Correa le indicó a la licenciada Soto Aguilú que no había podido inscribir su escritura de segregación debido a que no se había podido inscribir la compraventa

donde fungió como notaria. La notaria refirió a la señora Burgos Correa a los miembros de la sucesión para que atendieran el asunto. No fue hasta el 2019 que la licenciada Soto Aguilú realizó gestiones afirmativas ante el Departamento de Hacienda para atender este asunto. Como consecuencia de lo anterior, la licenciada Soto Aguilú infrigió el canon 19 del Código de Ética Profesional, supra.

## IV.

Al determinar la sanción disciplinaria que se impondrá a un abogado, abogada, notario o notaria, podemos considerar los siguientes factores: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien en relación con los hechos. *In re* Stacholy Ramos, 2021 TSPR 102 (2021). Para determinar la sanción correspondiente es imprescindible velar por el principio de proporcionalidad.

Del expediente ante nos surge que la licenciada Soto Aguilú no había sido imputada de violación alguna a la Ley Notarial o al Reglamento Notarial en un proceso disciplinario previo. No obstante, en el año 2019 se le sancionó por incumplir los Cánones 21 y 38 del Código de

Ética Profesional, supra. In re Soto Aguilú, 202 DPR 137 (2019). Ahora bien, es importante destacar que hasta el momento el negocio jurídico celebrado todavía no ha ganado acceso al Registro Inmobiliario Digital por los errores de la escritura. Ello constituye un perjuicio a terceros, particularmente a la señora Burgos Correa.

**V.**

Por los fundamentos expuestos, se decreta la suspensión inmediata de la Lcda. Roxanna I. Soto Aguilú del ejercicio de la notaría por un término de un año. De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios deontológicos que se recogen en el Código de Ética Profesional. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes señaladas, estará sujeta a sanciones disciplinarias mucho más severas. Se le ordena, además, a realizar a sus expensas todos los trámites necesarios para viabilizar la inscripción de la Escritura Núm. 1 de 2007.

Le ordenamos notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión Per Curiam y Sentencia. No hacerlo pudiera conllevar que no se le

reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Soto Aguilú y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Roxanna I. Soto Aguilú
(TS-15,568)

AB-2020-0020

Conducta
Profesional

SENTENCIA

En San Juan, Puerto Rico, a 30 de diciembre de 2021.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata de la Lcda. Roxanna I. Soto Aguilú del ejercicio de la notaría por un término de un año.

De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios deontológicos que se recogen en el Código de Ética Profesional. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes señaladas, estará sujeta a sanciones disciplinarias mucho más severas. Se le ordena, además, a realizar a sus expensas todos los trámites necesarios para viabilizar la inscripción de la Escritura Núm. 1 de 2007 que autorizó el 15 de marzo de 2007.

Le ordenamos notificar a todas las personas que han procurado de sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendiente y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no

rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría de solicitarlo en el futuro.

Asimismo, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Soto Aguilú y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia a la Lcda. Roxanna I. Soto Aguilú.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                        Javier O. Sepúlveda Rodríguez
                                        Secretario del Tribunal Supremo